UNITED STATES of America, Appellee,

v.

Nicholas UCCIO and Manos Sarantopoulos, Defendants–Appellants.

Nos. 1645, 1646, Dockets 90–1095, 90–1166.

United States Court of Appeals, Second Circuit.

Argued Aug. 27, 1990.

Decided Oct. 15, 1990.

As Amended Oct. 17, 1990.

Donald duBoulay, New York City, for defendant-appellant Uccio.

David E. Liebman, New York City, for defendant-appellant Sarantopoulos.

Mark E. Matthews, New York City, Asst. U.S. Atty. for the Southern District of New York (Otto G. Obermaier, U.S. Atty. for the Southern District of New York, Henry J. DePippo, Kerri Martin Bartlett, Asst. U.S. Attys., of counsel), for appellee.

Before FEINBERG and CARDAMONE, Circuit Judges, CABRANES, District Judge.*

FEINBERG, Circuit Judge:

Nicholas Uccio and Manos Sarantopoulos appeal from judgments of conviction entered in the United States District Court for the Southern District of New York, Michael B. Mukasey, J., following a jury trial. Appellants were each found guilty on both counts of a two-count indictment charging them with wire fraud in violation of 18 U.S.C. § 1343 and with conspiring to commit that offense.

Uccio's challenges relate only to his sentencing. He contends that the district judge was without jurisdiction to correct an improper sentence; that the judge's upward departure from the Sentencing Guidelines was substantively and procedurally flawed; and that the addition of a restitution term in the corrected sentence offended the Double Jeopardy Clause. Because, as set forth below, requirements for upward departure mandated by several of this court's recent decisions were not met, we remand for resentencing. The only issue on Sarantopoulos's appeal is whether it was proper to deny his severance motion. For reasons given below, we hold that it was and therefore affirm his conviction.

---

* Honorable José A. Cabranes, United States District Judge for the District of Connecticut, sitting by designation.

82

## Background

Defendants Uccio and Sarantopoulos participated in a scheme to obtain money from Shearson Lehman Hutton, Inc. ("Shearson") through the use of fraudulent wire transfers. The original three-count indictment, filed in December 1988, charged two separate conspiracies in separate counts and a single substantive count of wire fraud. The first two counts charged Uccio, Sarantopoulos and others with conspiring to commit wire fraud by fraudulently transferring $7.4 million from Shearson for their own use ("the first conspiracy"), and with a substantive count of wire fraud in relation to that transfer. The first conspiracy allegedly continued from January 1988 to the date of the indictment. The third count charged Uccio and others, but not Sarantopoulos, with conspiring to commit wire fraud by fraudulently attempting to transfer an additional $12 million from Shearson for their own use ("the second conspiracy"). The second conspiracy allegedly continued from April 1988 to June 1988.

In February 1989, Sarantopoulos moved to sever the third count of the original indictment, i.e., the second conspiracy, pursuant to Rules 8 and 14, Fed.R.Crim.P. While the severance motion was pending, the government filed a two-count superseding indictment in March 1989, consolidating what had been two separate conspiracy counts into a single conspiracy count that named all the defendants ("the overall conspiracy"). The overall conspiracy allegedly continued from January 1988 to November 1988. Sarantopoulos renewed his motion for a severance, which was denied.

Uccio and Sarantopoulos were tried on the superseding indictment. The district court instructed the jury that if, as the defense had argued, the government had proved one or more separate conspiracies, but had failed to prove the single overall conspiracy charged in the indictment, the defendants must be acquitted on the conspiracy count. The jury returned verdicts of guilty against Uccio and Sarantopoulos on both the conspiracy count and the substantive count.

Sarantopoulos was sentenced in January 1990 to concurrent terms of 40 months of imprisonment on each count, a fine of $10,000 and a three-year term of supervised release. Uccio was originally sentenced in early February 1990 and resentenced 11 days later. The terms and circumstances of Uccio's sentence were considerably more complicated, as set forth below.

## Uccio's Sentencing Proceedings

Uccio first appeared for sentencing on February 5, 1990. In its presentence report, the probation department calculated, pursuant to the United States Sentencing Guidelines ("U.S.S.G."), that Uccio's adjusted offense level and criminal history category resulted in a guideline range of 57 to 71 months. The probation department also reported several possible bases for upward departure. The district court heard oral argument on these issues as well as on an additional ground for upward departure raised by the court itself.

The probation department's first basis for upward departure was that the offense level inadequately reflected the magnitude of the fraud. At the time of the offense the maximum adjustment was 11 levels for all frauds in excess of $5 million. U.S.S.G. § 2F1.1(b)(1)(L). In contrast, the Guidelines effective November 1, 1989 would have required an adjustment of 16 levels for the $37 million involved in this scheme. U.S.S.G. § 2F1.1(b)(1)(Q) (effective November 1, 1989). (In addition to the $7.4 million transfer and the attempted $12 million transfer, there was apparently a proposal for another transfer of $18 million.) The district court rejected this basis, refusing to apply the November 1, 1989 Guidelines.

The probation department next pointed out that an upward departure might be justified by Uccio's kidnapping of co-defendant Sarantopoulos during the course of the conspiracy. The department referred to the possible applicability of section 5K2.4, which deals with abduction or unlawful restraint, and a multi-count calculation of the offense level as if Uccio had been convicted of the kidnapping. The district court agreed with defendant's position that the use of violence against a person in-

volved in committing a crime, rather than against a victim, was not the type of conduct contemplated as the basis for an upward departure under section 5K2.4.

Finally, the probation department suggested an upward departure because of the inadequacy of Uccio's criminal history category (III) in view of his criminal record. While the presentence report listed five prior convictions, three of these were not counted in calculating Uccio's criminal history category: two convictions in the 1960's for possession of policy slips and a 1976 conviction for the possession of stolen postal bonds. The probation department noted that the 1976 conviction was excluded from the calculation because Uccio's sentence was less than a year and a month and the conviction was more than ten years old. See U.S.S.G. § 4A1.2(e). Uccio had been sentenced on that conviction to only one year of imprisonment, to be served consecutively to a three-year sentence he was already serving as a result of a 1975 conviction for the possession and sale of stolen traveler's checks. The probation department suggested that had Uccio not already been serving the three-year sentence, the 1976 sentence would have been longer, resulting in the addition of criminal history points sufficient to move Uccio to criminal history category IV.

While focusing on Uccio's criminal history category, the district court also asked defense counsel to address Uccio's taped statements during the course of the conspiracy that "[w]e do a lot of things with these people," which the court interpreted in context as a reference to other criminal activity.

The district court gave the following statement of its findings:

... I find that the calculation of criminal history is insufficient as a predictor of criminal behavior by this defendant, for two reasons, both because of the one-year sentence imposed on the 1976 charge which, I agree with the probation department, would have been greater had there been no prior sentence being served at the time, and the defendant's own statement on tape to the effect he was involved in substantial other activity at the time this crime was committed. Accordingly, I think that the criminal history category should go from category 3 to category 4.

That yields a range ... of between 63 and 78 months. Because of the substantial record this defendant has, because of the apparent other activities that he was engaged in at the time, because of the violence that it [sic] was associated with making sure that the scheme went forward, I think all of those factors warrant a sentence upward of the guideline.

At the first sentencing hearing on February 5, 1990, the district court sentenced Uccio to a prison term of 78 months, to be followed by four years of supervised release. The court specified that if Uccio's monthly after-tax income exceeded $1200 per month, Uccio would have to pay the cost of supervised release. Finding Uccio to be without assets, the court explicitly declined to impose a fine or the cost of imprisonment.

About one-half hour after imposing sentence, the judge summoned the parties back to the courtroom and pointed out that the 78–month sentence exceeded the statutory maximum of five years for either count. While the government stated that consecutive sentences would permit a total sentence of 78 months without exceeding the statutory maximum on either count, the court adjourned the proceedings to February 16, 1990 to allow the parties to address the issue of the legality of consecutive sentences for conspiracy to commit an act and for the act itself.

At the February 16 sentencing, the court imposed consecutive sentences of 60 months on the conspiracy count and 18 months on the substantive count, for a total term of imprisonment of 78 months, to be followed by three years of supervised release (rather than the four years originally imposed), with the same condition for payment of the costs of supervised release should the defendant's after-tax income exceed $1200 per month. The district court also added a restitution term to Uccio's sentence, requiring that Uccio pay restitu-

tion in an amount and on a schedule to be determined in consultation with the probation department.

## Discussion

### I. Uccio

#### A. *The District Court's Jurisdiction to Resentence*

Uccio contends that under Rule 35(a), Fed.R.Crim.P., as amended by the Sentencing Reform Act, 18 U.S.C. § 3551 et seq., the district court did not have jurisdiction to correct the erroneous sentence imposed on February 5, or at most had such jurisdiction only during the ten-day period during which Uccio could appeal pursuant to Fed.R.App.P. 4(b). Uccio further argues that even if we find that the district court properly could have resentenced him 11 days after his original sentence, the district court's authority was limited to excising the illegal portion of the sentence, i.e., the term of imprisonment in excess of the statutory maximum of 60 months.

As will be seen below, the government has consented to a remand for reconsideration of the upward departure. This in large part renders moot Uccio's jurisdictional argument because the district court on remand will concededly have jurisdiction to resentence, pursuant to Rule 35(a) as amended. In any case, we have recently held that the amendment of Rule 35(a) did not diminish the district court's inherent power "to correct its own obvious errors in sentencing" within the time fixed for either party to file a notice of appeal. *United States v. Rico*, 902 F.2d 1065, 1067 (2d Cir.1990); see also *Bozza v. United States*, 330 U.S. 160, 166, 67 S.Ct. 645, 648, 91 L.Ed. 818 (1947).

In *Rico*, the district court had intended to sentence the defendant in accordance with the terms of her plea agreement, but mistakenly sentenced her to a shorter term of imprisonment. The government brought the error to the district court's attention three days later, and the court resentenced the defendant within the terms of the plea agreement 11 days after the original erroneous sentence. In this case, the district court also erred, by apparently imposing a sentence on Uccio in excess of the statutory maximum, and similarly resentenced the defendant 11 days after the original erroneous sentence.

■ Uccio argues that we held in *Rico* that the district court's power to correct an erroneous sentence was limited to the 10-day period after entry of judgment during which the defendant can appeal. But the facts in *Rico*, where the resentencing was also 11 days after the original sentence, make this claim untenable. More importantly, the rationale for imposing a limitation on the court's power to correct an erroneous sentence is that a sentence should be final after the time to appeal has expired; this rationale strongly suggests that the district court's inherent power to correct an erroneous sentence continues during the entire time in which either party can file a notice of appeal. See *United States v. Cook*, 890 F.2d 672, 675 (4th Cir. 1989); see also *Rico*, 902 F.2d at 1068. But see Preliminary Draft of Proposed Amendment to the Fed.R.Crim.P. (July 1990) (proposing that Rule 35 be amended to explicitly allow the district court to correct clear error in sentencing, but limiting correction period to seven days).

Uccio's final jurisdictional claim is that the district court's inherent authority is limited to excising the period of imprisonment in excess of the five-year statutory maximum. In support of his argument, Uccio cites *United States v. Sacco*, 367 F.2d 368 (2d Cir.1966), in which a divided panel of this court held that the transposition of intended sentences on two counts, resulting in a sentence on one count exceeding the statutory maximum, had to be reduced to the statutory level, and could not be corrected by re-transposing the sentences. However, *Sacco* turned on the fact that the defendant had served eight months of his sentence before the error was discovered ("[t]his is not the case of ... a judicial mistake corrected the same day"), and on the then well-settled rule that the Double Jeopardy Clause barred increasing a sentence after the defendant had begun to serve it. *Id.* at 369. In response, the government cites two cases in which

the district court was allowed to correct and increase a sentence in circumstances not unlike the instant case. *Giacalone v. United States*, 739 F.2d 40, 42 (2d Cir.1984) (district court corrected sentence within hours, specifying sentence consecutive to sentence defendant already serving); *United States v. DiLorenzo*, 429 F.2d 216, 221 (2d Cir.1970) (within hours of imposing inadvertently transposed sentences on two counts, exceeding statutory maximum on one, district court corrected error by re-transposing), cert. denied, 402 U.S. 950, 91 S.Ct. 1609, 29 L.Ed.2d 120 (1971). Other cases in this circuit also indicate that, even prior to the Sentencing Reform Act, the district court's correction of Uccio's sentence would not have been error. See, e.g., *United States v. Lopez*, 706 F.2d 108, 110 (2d Cir.1983) (concurrent six-year sentences imposed on two counts with statutory maximum of five years each corrected to consecutive five-year and one-year sentences; district court correction two weeks after original sentencing upheld).

■ In any event, all of these decisions pre-dated the Sentencing Reform Act and the Sentencing Guidelines. Cf. *Rico*, 902 F.2d at 1068 (defendant in post-Guidelines case has no expectation of finality when sentence can be increased on appeal; legally imposed new sentence may be greater than sentence being served). Uccio's argument in reliance on such cases as *Sacco* is founded on the mistaken premise that the sole illegality in the sentence originally imposed upon him was that it exceeded the statutory maximum of 60 months. However, the sentence was defective in another respect: Because the guideline range based on the court's findings was 63 to 78 months, more than the statutory maximum for either count, the Guidelines required that the district court impose consecutive sentences to the extent necessary to reach the selected sentence within the guideline range. U.S.S.G. § 5G1.2(d). Thus, the district court's original failure to impose consecutive sentences was part of the same error as the original imposition of a sentence in excess of the statutory maximum, and is subject to correction in the same manner.

## B. Upward Departure in Sentencing

Uccio argues that the district court must reconsider its upward departure from the Guidelines in light of *United States v. Kim*, 896 F.2d 678 (2d Cir.1990). The government commendably concedes that Uccio is substantially correct, citing, in addition, *United States v. Colon*, 905 F.2d 580 (2d Cir.1990). Although *Colon*, announced after Uccio's sentencing, and *Kim*, announced the day before the February 16, 1990 proceedings, were not available to the court below, they apply to our direct review of the sentence. See *Kim*, 896 F.2d at 681; *United States v. Coe*, 891 F.2d 405, 412 (2d Cir.1989). The parties therefore agree that a remand for reconsideration of the upward departure is required. We nevertheless briefly address various issues raised in order to provide the district court with some direction in "the wilderness of the Guidelines." *Colon*, 905 F.2d at 584.

As a preliminary matter, we note that when there are factual issues in dispute in connection with sentencing, a district court "may make its findings based on a preponderance of the evidence." *United States v. Shoulberg*, 895 F.2d 882, 886 (2d Cir.1990); see *United States v. Guerra*, 888 F.2d 247, 251 (2d Cir.1989), cert. denied, —— U.S. ——, 110 S.Ct. 1833, 108 L.Ed.2d 961 (1990). Moreover, the specific grounds underlying any upward departure must be clearly identified on the record. *Colon*, 905 F.2d at 585; *United States v. Cervantes*, 878 F.2d 50, 54 (2d Cir.1989); 18 U.S.C. § 3553(c)(2) (sentencing court must state "specific reason" for sentence outside guideline range).

The Guidelines provide for two distinct methods of departing upward from the guideline range. *Colon*, 905 F.2d at 585. First and more generally, in accordance with 18 U.S.C. § 3553(b), section 5K2.0 authorizes upward departure in considering the offense level if the court finds that "there exists an aggravating ... circumstance ... not adequately taken into consideration by the Sentencing Commission in formulating the guidelines." U.S.S.G. § 5K2.0. In making a Ch. 5, Part K depar-

ture, the sentencing court must move vertically down the sentencing table until it reaches the appropriate higher offense level. *Kim*, 896 F.2d at 685.

A more limited authority for departure from the guideline range is set forth in section 4A1.3, which authorizes an upward departure if the criminal history category assigned to the defendant "does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes." U.S.S.G. § 4A1.3. See *Kim*, 896 F.2d at 683; *Coe*, 891 F.2d at 409. A Ch. 4, Part A departure is made by moving across the horizontal axis of the sentencing table to the appropriate higher criminal history category. *Kim*, 896 F.2d at 685; *Cervantes*, 878 F.2d at 53–54.

■ Misconduct other than the offense of conviction may form the basis of either type of departure, depending on the relationship between the misconduct and the offense of conviction. *Kim*, 896 F.2d at 683–84. Acts of misconduct that "relate in some way to the offense of conviction, even though not technically covered by the definition of relevant conduct" may be the grounds of a Ch. 5, Part K upward departure. *Id.* at 684. If the misconduct is not related to the offense of conviction, however, it is not an appropriate basis for a Ch. 5, Part K upward departure, although it may justify an upward departure under Ch. 4, Part A. *Id.* at 683–84. Thus, the sentencing court must determine whether or not the misconduct other than the offense of conviction is "related" to that offense. Here, the district court determined only that "[Uccio] was involved in substantial other activity at the time this crime was committed." On remand, the government concedes, the district court must make the factual findings necessary to determine whether either a Ch. 5, Part K or Ch. 4, Part A upward departure is appropriate in light of *Kim*.

To justify its upward departure, the district court also relied on its view that Uccio's one-year 1976 sentence would have been heavier if it had not been imposed while he was already incarcerated, so that

the 1976 conviction narrowly missed being counted in his criminal history category. As the government again concedes, however, this rationale must be reconsidered in light of our decision in *Colon*, where we expressed our uneasiness with the government's theory that upward departure was warranted because the timing of the defendant's prior criminal activities meant that he narrowly missed being categorized as a "career offender." *Colon*, 905 F.2d at 583, 586. As we stated in *Colon*, although the lines drawn between categories in the Guidelines may appear arbitrary, they must be observed if the system is to succeed:

> The fact that a defendant falls just below a line leading to a harsher sentence is by itself no more grounds for departing upward than the fact that a defendant falls just above the line is by itself grounds for departing downward. Rather, the assessment to be made under Section 4A1.3 concerns whether the designated criminal history category adequately reflects the seriousness of the defendant's past conduct viewed in its entirety and the likelihood of more such conduct in the future.

*Id.* at 586.

Finally, the district court cited "the violence" that was associated with the scheme as one of the factors supporting an apparent Ch. 4, Part A upward departure, although the court had correctly noted earlier that a departure based on Uccio's kidnapping of his co-defendant related to the offense level rather than to Uccio's criminal history category, i.e., that the kidnapping would relate to a Ch. 5, Part K departure rather than to a Ch. 4, Part A departure. See *Kim*, 896 F.2d at 683 ("a physical injury inflicted in the course of committing a fraud" is the type of related misconduct that could form the basis of a Ch. 5, Part K departure). The court had also previously indicated that it would not rely on the kidnapping as the basis for departure, arguably depriving the defense of its opportunity to fully challenge its use as an upward departure factor. See *Kim*, 896 F.2d at 681 (emphasizing the importance of allowing the defendant to address upward

departure factors under consideration by the sentencing court); *United States v. Palta*, 880 F.2d 636, 640 (2d Cir.1989) ("[a]dequate notice and the opportunity to contest an upward departure" are "indispensable"). The government suggests that the district court's reference to "violence" is best understood as an explanation of its reasons for sentencing Uccio at the top of the range, rather than as a factor warranting upward departure. The district court will be able to clarify its reference to "violence" on remand.

### C. Double Jeopardy

■ Finally, Uccio contends that the district court's imposition of restitution at his resentencing on February 16, 1990 violated the Double Jeopardy Clause by defeating his reasonable expectation of finality with respect to that portion of his original sentence.

The Sentencing Guidelines require a district judge to impose restitution as part of the sentence for convictions under Title 18 of the United States Code, unless the judge " 'determines that the complication and prolongation of the sentencing process resulting from the fashioning of an order of restitution ... outweighs the need to provide restitution to any victims.' " U.S.S.G. § 5E1.1(a) & commentary (quoting 18 U.S.C. § 3663(d)). Moreover, "[i]f the court does not order restitution, or orders only partial restitution, it must state its reasons for doing so." Id.; 18 U.S.C. § 3553(c).

In originally sentencing Uccio on February 5, 1990, the district court should have either ordered restitution or explained its reasons for not doing so. On that occasion it did neither. At the sentencing on February 16, however, the court did require restitution. Uccio's double jeopardy claim is founded on his contention that the district court consciously declined to impose restitution on February 5, but neglected to explain its reasons on the record. We see no reason to make this assumption. There is nothing in the record to support it, and the absence of any reference to restitution on February 5, if anything, supports a con-

trary view. We believe that the district court's error on February 5 lay in failing to consider at all whether a restitution term should be imposed. The district court therefore could permissibly remedy its error by ordering restitution within the time fixed for either party to appeal. See Part I.A. of this opinion. Moreover, when it is necessary to correct a sentence to make it lawful, the corrected sentence may be greater than the sentence originally imposed without violating the Double Jeopardy Clause. *Rico*, 902 F.2d at 1068–69; see also *Bozza*, 330 U.S. at 166–67, 67 S.Ct. at 648–49. Therefore, the district judge's correction of Uccio's sentence on February 16 to include restitution did not violate the Double Jeopardy Clause.

### II. Sarantopoulos

■ Federal Rule of Criminal Procedure 8(b) provides that two or more defendants may be tried together if they are charged with participating in "the same series of acts or transactions constituting an offense or offenses." Fed.R.Crim.P. 8(b); *United States v. Turoff*, 853 F.2d 1037, 1043 (2d Cir.1988). We review the propriety of joinder under Rule 8(b) as a question of law. See, e.g., *id.* at 1042. It is an "established rule" that "a non-frivolous conspiracy charge is sufficient to support joinder of defendants under Fed.R.Crim.P. 8(b)." *United States v. Nerlinger*, 862 F.2d 967, 973 (2d Cir.1988). The superseding indictment, which Sarantopoulos concedes was properly filed, charged Sarantopoulos, and all the other defendants charged in the indictment, with participation in a single overall conspiracy. The jury's verdict, after a multiple conspiracy instruction that Sarantopoulos does not challenge, demonstrates that the conspiracy charge was not frivolous. *United States v. Friedman*, 854 F.2d 535, 561 (2d Cir.1988) ("[w]hether the evidence in a case establishes single or multiple conspiracies is a question of fact to be resolved by a properly instructed jury"), cert. denied, —— U.S. ——, 109 S.Ct. 1637, 104 L.Ed.2d 153 (1989). The district court did not err as a matter of law in rejecting the claim that appellant's joinder was improper under Rule 8(b).

Sarantopoulos also appeals the district court's discretionary denial of his Rule 14 severance motion. We have described the denial of Rule 14 severance motions as "virtually unreviewable," because the defendant bears the "extremely heavy burden" of showing that he suffered "prejudice so substantial as to amount to a 'miscarriage of justice'". *Friedman,* 854 F.2d at 563; see also *Nerlinger,* 862 F.2d at 974. Sarantopoulos's claim that he was prejudiced by the admission of evidence relating to transactions in which he was not involved does not approach this standard. Indeed, he does not show that the same evidence would not have been admissible against him even if he had been separately tried. See *United States v. Nersesian,* 824 F.2d 1294, 1304 (2d Cir.) (government entitled to show entire range of evidence of the conspiracy against each defendant), cert. denied, 484 U.S. 957, 108 S.Ct. 355, 98 L.Ed.2d 380 (1987).

Much of Sarantopoulos's severance argument is based on the original indictment, which charged two separate conspiracies. Contrary to Sarantopoulos's contention, the filing of the superseding indictment was not a mere change of form, and was certainly not risk-free for the government. As the district court instructed the jury, had the government failed to prove the single conspiracy charged in the superseding indictment, Sarantopoulos (and the other defendants charged in the conspiracy count) would have been acquitted on that count, even if the government had proved the two separate conspiracies charged in the original indictment.

On Uccio's appeal, the case is remanded for resentencing in accordance with this opinion. On Sarantopoulos's appeal, the judgment of conviction is affirmed.