**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                    No. 95-5420

TIMOTHY R. WALKER,
Defendant-Appellant.

Appeal from the United States District Court
for the District of South Carolina, at Columbia.
Dennis W. Shedd, District Judge.
(CR-94-892)

Argued: December 6, 1996

Decided: April 25, 1997

Before RUSSELL and MOTZ, Circuit Judges, and
MICHAEL, Senior United States District Judge
for the Western District of Virginia,
sitting by designation.

Affirmed by published opinion. Judge Russell wrote
the opinion, in which Judge Motz and
Senior Judge Michael joined.

_____

**COUNSEL**

**ARGUED:** Gregory Poole Harris, Columbia, South Carolina, for
Appellant. John Michael Barton, Assistant United States Attorney,
Columbia, South Carolina, for Appellee. **ON BRIEF:** J. Preston
Strom, Jr., United States Attorney, Columbia, South Carolina, for
Appellee.

_____

**OPINION**

RUSSELL, Circuit Judge:

Timothy Walker, a disbarred attorney, operated as an insurance agent representing several insurance companies in South Carolina. In the course of his business he received large amounts of money from his customers for the purchase of lump-sum annuities. Walker, evidently dissatisfied with his normal sales commissions, diverted the funds into his own personal bank account. To perpetuate the scheme, he used the United States mail to send fictitious purchase confirmations, account statements and interest payments to his defrauded customers. The total amount of money involved was $850,913.59.

In late 1994, a grand jury indicted Walker on nine counts of mail fraud[1] and three counts of money laundering.[2] Pursuant to a plea agreement, Walker pleaded guilty to all twelve counts. The plea agreement required him to aid the government in identifying and recovering his assets. In return, the Government agreed to make a non-binding recommendation that Walker receive a three-level downward adjustment in his offense level for acceptance of responsibility.[3] The Government's obligations, however, were contingent upon Walker being "fully truthful and forthright" concerning his assets and Walker's promise to use those assets "to make restitution as directed by the Court."

The Presentence Investigation Report calculated Walker's offense level at 26 with a criminal history category of I, resulting in a Sentencing Guidelines range of 63-78 months imprisonment. The offense level, however, included the downward adjustment for acceptance of responsibility. Additionally, the report stated that the district court could consider Walker's past illegal acts as an attorney, none of

_____

[1] 18 U.S.C.A. § 1341 (West Supp. 1997).

[2] 18 U.S.C.A. § 1956(a)(1)(A)(i) (West Supp. 1997).
[3] U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 3E1.1(a) & (b) (1994).

which had resulted in a criminal conviction, as a factor in departing
upward in his criminal history category.[4]

During the seventy-five days between his guilty plea and his sentencing hearing, Walker increased his credit card debt by almost $48,000. At the sentencing hearing, the Government, believing that Walker had breached the plea agreement by failing to use all of his assets for restitution, argued against a downward adjustment for acceptance of responsibility. Walker testified that the expenditures
were for professional service bills and necessities for his family. The
district court found that Walker's conduct was inconsistent with an acceptance of responsibility and refused to grant the downward adjustment.

The Government then moved for an upward departure in criminal history category because of Walker's prior illegal conduct. The district court granted the motion and departed to criminal history category III. Based on the recalculated Sentencing Guidelines range of 108-135 months, the district court sentenced Walker to 120 months imprisonment.

On appeal, Walker complains that the Government breached the plea agreement, the district court erroneously departed upward to criminal history category III, and the district court miscalculated his
offense level. Having failed to raise any of these issues below, Walker
is only entitled to relief upon a showing of plain error.[5]

I.

Walker seeks a remand for resentencing because the Government failed to recommend, and in fact argued against, a downward adjustment for acceptance of responsibility as promised in the plea agreement. In order to be entitled to the recommendation, Walker had to assist with the identification, marshalling and distribution of all of his
assets for the purpose of restitution. The transcript of the guilty plea
hearing reveals that Walker was aware of his obligation. The district

---

[4] **Id.** at § 4A1.3(e).

[5] **United States v. Fant**, 974 F.2d 559, 565 (4th Cir. 1992).

3

court specifically informed Walker that he was being released on bond only because the court was "very interested in having the people
who were defrauded get their money back one way or the other."

Instead of fully engaging in the restitution process, Walker chose to use his credit cards to pay off various unrelated creditors. This violation of the plea agreement was sufficient to release the Government
from its promise to recommend a downward adjustment.

Walker also claims, in a one-sentence statement in his brief, that the district court was required to give him notice that it did not intend
to grant the downward adjustment. Unfortunately, Walker seems to have confused a departure from the Sentencing Guidelines with an adjustment under the Sentencing Guidelines. Although a district court's decision to depart based on a previously unidentified ground
requires notice,[6] we have held that a district court is not required to
give notice of its eventual withholding of an acceptance of responsibility adjustment.[7]

II.

The Presentence Investigation Report stated that Walker's prior illegal conduct as an attorney could establish the basis for an increased criminal history category. At the sentencing hearing, the district court upwardly departed from category I to category III.

Walker raises two separate claims concerning the upward departure. First, he contends that the district court erred by failing to consider category II in making its determination. We have stated that a
sentencing court should depart "first to the next higher category and
. . . move on to a still higher category only upon a finding that the
next higher category fails adequately to reflect the seriousness of the
defendant's record."[8] The sentencing hearing transcript, however,

_____

[6] **Burns v. United States**, 501 U.S. 129, 138 (1991); United States v.
Maddox, 48 F.3d 791, 799 (4th Cir. 1995).
[7] **United States v. White**, 875 F.2d 427, 431-32 (4th Cir. 1989).
[8] **United States v. Rusher**, 966 F.2d 868, 884 (4th Cir. 1992). This language is dicta, see Rusher, 966 F.2d at 890 (Luttig, J., concurring

in part, concurring in judgment in part, and dissenting in part), but in <u>United States v. Cash</u>, 983 F.2d 558, 561 (4th Cir. 1992), we confirmed that it identified the proper approach.

4

establishes that the district court did hear arguments concerning criminal history category II. The Government sought a two-level upward departure based on forgery, obstruction of justice, and embezzlement, all allegedly committed by Walker while he was a practicing attorney. After discussing the specifics of Walker's prior conduct, the district court directed the Government to "[m]ake your argument again for me on why [Category] II . . . doesn't apply." The Government reiterated its position that category II is intended for defendants with only minor past criminal conduct. Based on this exchange, we find that the district court adequately considered the appropriateness of category II.

Second, Walker argues that his credit card use was the real reason behind the district court's upward departure to criminal history category III. Walker, however, misconstrues some of the district court's remarks in order to support his claim. As discussed above, the record establishes that the district court based its upward departure on Walker's prior instances of uncharged criminal activity.

III.

Walker pleaded guilty to both mail fraud and money laundering. For the purpose of determining his base offense level under the Sentencing Guidelines, the district court grouped the counts together pursuant to U.S.S.G. § 3D1.2(d) and applied the higher base offense level for money laundering pursuant to U.S.S.G. § 3D1.3(b). Along with other adjustments, Walker received a four-level specific offense characteristic increase under the money laundering guideline because the fraudulent scheme involved between $600,000 and $1,000,000.**9** Walker claims this was a miscalculation. He argues that in determining his specific offense characteristic the district court should have considered only the $5051.01 in fictitious interest payments specifically identified in the money laundering counts of the indictment.

The
Government counters that all of the allegations in the mail fraud counts, which Walker concedes involved $850,913.59, were incorporated into the money laundering counts by the grand jury. Furthermore, the facts of the case establish that the mail fraud and money laundering crimes were interrelated.

---

[9] U.S.S.G. § 2S1.1(b)(2)(E).

5

The first step in analyzing this issue is to determine if the counts were properly grouped. Under § 3D1.2(d), counts involving substantially the same harm shall be grouped "when the offense level is determined largely on the basis of the total amount of harm or loss . . . or some other measure of aggregate harm, or if the offense behavior is ongoing or continuous in nature and the offense guideline is written to cover such behavior." Application Note 6 to § 3D1.2 states that "[c]ounts involving offenses to which different offense guidelines apply are grouped together under subsection (d) if the offenses are of the same general type and otherwise meet the criteria . . . ." Subsection (d) expressly permits the grouping of offenses under the fraud and money laundering guidelines, but any grouped offenses must be "closely related."[10]

In United States v. Porter, this court addressed the grouping of offenses under § 3D1.2(d) in a case where the defendant pleaded guilty to money laundering and gambling charges. [11] Although we found that the grouping of offenses in Porter was inappropriate because the offenses were "completely unrelated," we noted that "[o]ne could envision an illegal enterprise which generated monies through illegal . . . activities and simultaneously laundered those monies as part of the same continuing transaction or common scheme."[12] Walker's money laundering was part of his fraudulent scheme because the funds were used to make fictitious interest payments. In effect, Walker conceded the offenses were closely related when he pleaded guilty to money laundering under the particular provision of the statute that forbids conducting financial transactions involving the proceeds of a specified unlawful activity "with the intent to promote the carrying on of [the] specified unlawful activity."[13] Following our analysis in Porter, we find that the offenses were properly grouped together.[14]

---

[10] **United States v. Porter**, 909 F.2d 789, 792-93 (4th Cir. 1990).
[11] **Id.** at 791.
[12] **Id.** at 793.
[13] 18 U.S.C.A. § 1956(a)(1)(A)(i).
[14] **See United States v. Mullens**, 65 F.3d 1560, 1564 (11th Cir. 1995) cert. denied, 116 S.Ct. 1337 (1996) (grouping mail fraud and money laundering offenses under § 3D1.2(d)). But see United States v. Johnson,

971 F.2d 562, 576 (10th Cir. 1992) (mail fraud and money laundering offenses cannot be grouped under § 3D1.2(d)).

6

Next, we must determine whether the Sentencing Guidelines permitted the district court to use the amount of money Walker obtained through mail fraud as the basis for calculating his specific offense characteristic under the money laundering guideline. Application Note 3 to § 3D1.3 states that a sentencing court should "[d]etermine whether the specific offense characteristics . . . apply based upon the combined offense behavior taken as a whole." In <u>United States v. Mullens</u>, the Eleventh Circuit examined a similar grouping of closely related mail fraud and money laundering counts and found that in determining the specific offense characteristic under the money laundering guideline a court is "`required to consider the total amount of funds that it believed was involved in the course of criminal conduct.'"**15** We agree and hold that the district court correctly calculated Walker's offense level.

IV.

For the foregoing reasons, Walker's sentence is affirmed.

<u>AFFIRMED</u>

---

**15 <u>Mullens</u>**, 65 F.3d at 1564 (quoting <u>United States v. Barrios</u>, 993 F.2d 1522, 1524 (11th Cir. 1993))

7