UNITED STATES of America,
Appellee,

v.

Furman BRIDGES, Appellant,

No. 97–3144.

United States Court of Appeals,
District of Columbia Circuit.

Argued Sept. 3, 1998.

Decided May 18, 1999.

Carmen D. Hernandez, Assistant Federal Public Defender, argued the cause for appellant. With her on the briefs was A.J. Kramer, Federal Public Defender. Tony W. Miles, Assistant Federal Public Defender, entered an appearance.

Thomas P. Swanton, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were Wilma A. Lewis, U.S. Attorney, John R. Fisher, Mary-Patrice Brown and S. Elisa Poteat, Assistant U.S. Attorneys.

Before: SENTELLE, HENDERSON and GARLAND, Circuit Judges.

Opinion for the Court filed by Circuit Judge GARLAND.

GARLAND, Circuit Judge:

Defendant Furman Bridges pled guilty to one count of mail fraud in violation of 18 U.S.C. § 1341. The district court departed upward from the sentence Bridges would otherwise have received under the United States Sentencing Guidelines ("U.S.S.G.") by increasing his criminal history category from II to V. Bridges appeals his sentence on two grounds. First, he contends that in explaining why it chose Category V, the court erred by not first pausing and explaining why Categories III and IV were inadequate. Second, he contends that the departure was unlawful because it was based on a consideration of prior convictions that were not similar to mail fraud. In particular, defendant argues that in determining the similarity of offenses, a sentencing court is limited to comparing their facial elements and may not consider the conduct underlying any of the offenses—even the offense for which the defendant is currently being sentenced. For the reasons set forth below, we reject defendant's contentions and affirm the judgment of the district court.

## I

Bridges was charged in a five-count information with using the mail to execute a scheme to defraud "numerous businesses and credit card companies" between 1994 and 1996. Appendix ("App.") at 4. Pursuant to a plea agreement, Bridges pled guilty to one of the mail fraud counts charged in the information. The mail ele-

ment of the crime was satisfied when Bridges mailed a check to "Frederick's of Hollywood" for the purchase of certain unspecified merchandise. The fraud element was satisfied because the check belonged to Louis A. Robinson, Sr., rather than to Bridges, and because Bridges forged Mr. Robinson's signature on the check. Unfortunately for Robinson, he had the same street address as Bridges—except that Robinson's address was in the Northeast quadrant of Washington, D.C., while Bridges' was in the Southeast. The Postal Service apparently misdelivered a box of Robinson's checks to Bridges—who forged Robinson's signature and sent a check off to California.

Although Bridges pled guilty to mailing a single forged check, he accepted responsibility for a broader scheme, which was exposed during the investigation and which constituted part of the "relevant conduct" of his offense for purposes of the Sentencing Guidelines. See U.S.S.G. § 1B1.3 (relevant conduct). In addition to the check he forged and sent to Frederick's of Hollywood, Bridges forged numerous other checks belonging not only to Mr. Robinson, but also to his wife, whose checks had been misdelivered to Bridges' address as well. Nor were the Robinsons the only victims of the overall scheme. Bridges obtained (by an unspecified method) checks that had been stolen from several other individuals, and used them to purchase merchandise through the mail. He also obtained a credit card stolen from a tourist, and submitted a fraudulent application for another credit card in the name of yet another innocent victim. Bridges used the checks and credit cards to purchase a total of $26,597.42 worth of merchandise for himself and his girlfriend. Presentence Investigation Report ("PSR") ¶¶ 4–14.

Under the Sentencing Guidelines, an offender's sentencing range is generally determined by the intersection of his offense level, which depends upon the characteristics of the offense for which he was con-

victed, and his criminal history category, which depends upon his prior criminal conduct. Bridges' PSR, prepared for the district court by the U.S. Probation Office, calculated his offense level as 10 (on a scale of 1–43) and his criminal history category as II (on a scale of I–VI). Id. ¶¶ 28, 35. The latter was based on Bridges' 1987 sentence for unauthorized use of an access device (a credit card). In addition to that conviction, Bridges had five more sentences on his record for offenses spanning the period 1966–75, including unauthorized use of a motor vehicle, forgery, petty larceny, unlawful possession of stolen property, and false pretenses. Those sentences were not counted in the calculation of Bridges' criminal history category because the Sentencing Guidelines limit the calculation to sentences imposed within ten or fifteen years of the instant offense. U.S.S.G. § 4A1.2(e).

Based on an offense level of 10 and a criminal history category of II, the PSR calculated a guideline sentencing range of 8 to 14 months imprisonment. PSR ¶ 57. Under U.S.S.G. § 4A1.3, p.s., however, a court may impose a sentence departing from the otherwise applicable guideline range if the defendant's "criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes." In this case, the PSR concluded that due to the large number of uncounted prior convictions, "an upward departure may be warranted" for just that reason. PSR ¶ 70. The Report noted that had Bridges' older convictions been counted, his criminal history category would have been V rather than II, and the resulting sentencing range would have been 21 to 27 months. Id.

At the sentencing hearing, the district court accepted the PSR's findings and recommendations, concluding that Criminal History Category II "significantly under represents the seriousness of [the defendant's] criminal history or the likelihood that he will commit further crimes." Sen-

tencing Tr. at 16. Quoting from the PSR, the court reviewed some of the defendant's five prior convictions in support of that conclusion. *Id.* at 16–19. The court then departed upward by placing the defendant in Category V and sentencing him to 24 months imprisonment, the mid-point of the enhanced range. *Id.* at 19. The court's written Judgment stated that it adopted the factual findings of the PSR, listed all of defendant's prior convictions, and indicated that those convictions justified a departure to Category V under U.S.S.G. § 4A1.3. App. at 18–24.

## II

■ We review a district court's decision to depart from the Guidelines under the unitary abuse of discretion standard set forth in *Koon v. United States,* 518 U.S. 81, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996). Under that standard, "substantial deference" is required "in most cases." *Id.* at 98. We must uphold a district court's findings of fact unless clearly erroneous, and must give due deference to its application of the Guidelines to the facts. *See Koon,* 518 U.S. at 97 (citing 18 U.S.C. § 3742(e)); *United States v. Dozier,* 162 F.3d 120, 123 (D.C.Cir.1998). "A district court by definition abuses its discretion when it makes an error of law," however, and the "court of appeals need not defer to the district court's resolution" of such legal issues. *Koon,* 518 U.S. at 100. Hence, our review of questions of law is de novo. *See United States v. Becraft,* 117 F.3d 1450, 1451 (D.C.Cir.1997).

■ Bridges does not dispute the appropriateness of some upward departure in his case, but contends that the sentencing court erred by departing from Category II to Category V without expressly explaining why each intervening category was inadequate—a process defendant styles as a "step-by-step methodology." Def. Br. at 13. Although the extent of a departure is reviewable only for its reasonableness, *see Williams v. United States,* 503 U.S. 193, 202–03, 112 S.Ct. 1112, 117

L.Ed.2d 341 (1992); 18 U.S.C. § 3742(e)(3), Bridges contends that the step-by-step requirement is compelled by the text of U.S.S.G. § 4A1.3. Because Bridges' contention is that the step-by-step methodology is required as a matter of law, we review the issue de novo.

### A

■ Guidelines § 4A1.3, which governs departures based on the inadequacy of a defendant's criminal history category, states in pertinent part:

> In considering a departure under this provision, the Commission intends that the court use, as a reference, the guideline range for a defendant with a higher or lower criminal history category, as applicable. For example, if the court concludes that the defendant's criminal history category of III significantly under-represents the seriousness of the defendant's criminal history, and that the seriousness of the defendant's criminal history most closely resembles that of most defendants with Criminal History Category IV, the court should look to the guideline range specified for a defendant with Criminal History Category IV to guide its departure.

U.S.S.G. § 4A1.3, p.s. We do not read this text to mandate a process of step-by-step consideration or explanation. The first sentence requires the court to use as a reference the guideline range for a defendant with *a* higher (or lower) criminal history category; it does not say the court must use the range of a defendant with the *next* higher category. It is true that the example the Guideline provides is one in which a court, finding Category III to be inadequate, is directed to look to Category IV for guidance. But the text directs the court to Category IV not because it is the next higher category, but because, in the example, the seriousness of the defendant's criminal history "most closely resembles" that of most defendants in Category IV. The Guideline's requirement,

then, is to look to the category that "most closely resembles" the seriousness of defendant's criminal history, rather than to perform any particular mental gymnastics in the process of concluding which category that might be.

Our conclusion that the text of § 4A1.3 does not require a step-by-step procedure for departing from one criminal history category to another is strengthened by the fact that the same Guideline does expressly require such a procedure when departing above the highest criminal history category. When a court determines that not even Category VI adequately reflects the defendant's past criminal conduct, there is no higher criminal history category to which it can refer: Category VI already yields the highest sentencing range for a given offense level. In such circumstances, § 4A1.3 directs the court to look instead to the "next" higher offense level, until it finds one that yields a guideline range appropriate to the case. Moreover, it expressly directs the court to undertake that task "incrementally":

> Where the court determines that the extent and nature of the defendant's criminal history, taken together, are sufficient to warrant an upward departure from Criminal History Category VI, *the court should structure the departure by moving incrementally down the sentencing table to the next higher offense level* in Criminal History Category VI until it finds a guideline range appropriate to the case.

*Id.* (emphasis added). This plainly indicates that the Commission knew how to require step-by-step consideration when it wanted to.[1] The absence of any such direction to "structure ... incrementally" a departure within the existing criminal his-

tory categories confirms our view that such an approach is not required.

Of course, the statutes and Guidelines do impose some limits on the decision-making process undertaken by the sentencing court. As noted above, § 4A1.3 directs the court to use "as a reference" the criminal history category that "most closely resembles" the seriousness of the defendant's criminal history. The statute further mandates that the court state "the reasons for its imposition of the particular sentence," as well as "the specific reason for the imposition of a sentence different from that" prescribed by the Guidelines. 18 U.S.C. § 3553(c), (c)(2).[2] But if the sentencing court has done these things, we cannot find an abuse of discretion simply because we would have preferred that it employ a different procedural approach. *See generally Williams,* 503 U.S. at 205 ("[E]xcept to the extent specifically directed by statute, it is not the role of an appellate court to substitute its judgment for that of the sentencing court as to the appropriateness of a particular sentence.") (internal quotation omitted); *cf. Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc.,* 435 U.S. 519, 98 S.Ct. 1197, 55 L.Ed.2d 460 (1978) (holding that court may not impose procedural requirements on agency decision-making that go beyond those of the Administrative Procedure Act).

■ The sentencing court satisfied the necessary requirements in Bridges' case. The court's explanation makes clear that it used Category V as a reference because it was the category that most closely resembled the seriousness of Bridges' criminal history; it was the category Bridges would have been assigned had his older prior convictions been counted in the PSR's calculation. (As discussed in Part III below,

---

1. We need not decide today whether the step-by-step methodology for departures above Category VI requires a court to discuss each higher offense level seriatim, or whether it is satisfied if the reasons for rejecting intervening levels are implicit in the level ultimately chosen. See *infra* p. 1068 & note 6.

2. The statute also requires that the extent of the departure be reasonable. 18 U.S.C. § 3742(e)(3).

it was appropriate for the court to count those convictions in considering a departure.) Under those circumstances, a separate explanation of the court's decision not to choose Categories III and IV would have been superfluous. We see no reason, and have no warrant, to overturn the district court simply because it did not go through the exercise of explaining the rejection of choices implicit in the choice it did make.

**B**

Bridges points to two cases from this Circuit that he contends support his step-by-step requirement. In the first, *United States v. Allen,* 898 F.2d 203 (D.C.Cir. 1990), the district court had imposed a sentence above the range dictated by Criminal History Category VI without explaining why Category VI itself was inadequate. *Id.* at 205. Although we vacated the sentence, we did not impose a step-by-step requirement for departures within the criminal history categories. Rather, we held that "the sentencing judge must consider upward adjustment to a higher criminal history category *before imposing a sentence that moves beyond the Guidelines categories*" altogether. *Id.* at 203 (emphasis added). As noted above, departures beyond the criminal history categories present different issues than departures within the categories, and *Allen* is thus inapplicable to Bridges' within-the-categories departure.[3]

The second case cited by defendant, *United States v. Taylor,* 937 F.2d 676 (D.C.Cir.1991), did involve a within-the-categories departure, from Category III to Category V. And in remanding the sentence, we did state that "the district court should have first explained why a departure of one level would be inadequate." *Id.* at 683. We did not intend by that statement, however, to impose a step-by-step methodology for all criminal history departures. The problem in *Taylor* was that the district court had left its rationale for the extent of the departure wholly unexplained. *Id.* Our underlying concern was "that the district court's two-level departure may have been inadvertent," and that it may have intended to depart only one level. *Id.* Under those circumstances, an explanation of why a one-level departure was inadequate was the minimum necessary to assuage our concern that the court had simply made a mistake in its calculations. Accordingly, we limited our holding as follows: "The only point on which we hold the district court erred is its *unexplained,* two-level departure in [the defendant's] criminal history category." *Id.* at 684 (emphasis added).

Bridges also seeks support in the decisions of other circuits. He first directs our attention to the Tenth Circuit's en banc opinion in *United States v. Jackson,* 921 F.2d 985 (10th Cir.1990). *Jackson,* however, is directly contrary to Bridges' position. The court did hold, as we have above, that in departing on the basis of criminal history a court should use a higher category "as a reference." But it stressed that "[t]he reference should not be mechanical. A district court need not exhaust in sequence each higher criminal history category. Rather, the court may use any reasonable methodology hitched to the Sentencing Guidelines . . . ." 921 F.2d at 991 (internal quotation and citations omitted).[4] To simi-

3. Guideline § 4A1.3's specific language, requiring a court to "mov[e] incrementally down the sentencing table to the next higher offense level" when departing above the criminal history categories, was not added until after *Allen* was decided. *See* U.S.S.G.App. C, amend. 460 (effective Nov. 1, 1992). *Allen* relied instead on the language requiring the sentencing court to "use, as a reference, the guideline range for a defendant with a higher . . . criminal history category." *See* 898 F.2d at 204 (quoting U.S.S.G. § 4A1.3, p.s.). In that case, the sentencing court had departed above the criminal history categories without referring to a higher category or explaining why departing to a higher category would have been inadequate.

4. Bridges also cites the Tenth Circuit's opinion in *United States v. Okane,* 52 F.3d 828 (10th Cir.1995), but there, too, the court held no more than what we have held above: that

lar effect is a First Circuit opinion cited by defendant, *see United States v. Ocasio*, 914 F.2d 330, 336 (1st Cir.1990) (holding that sentencing judge must "offer a rationale for the degree of departure," but "reject[ing] any bright-line rule that requires a sentencing judge . . . to subrogate his or her residual discretion to some explicit or external criteria"),[5] as well as the Seventh Circuit's opinion in *United States v. Tai*, 41 F.3d 1170, 1178 n. 7 (7th Cir.1994) ("[Circuit precedent] does not require that a district court consider and reject each intermediate criminal history category. The most that [precedent] requires is an examination of 'the higher categories [to] determine if the defendant closely resembles other defendants who belong in some other category.' ") (citation omitted).

A number of circuits do require a sentencing court to *consider* higher criminal history categories sequentially, but do not regard a failure to *discuss* intervening categories as error so long as the basis for the court's final choice is clear from the record.[6] In practice, this approach will seldom if ever yield results different from our own. *See United States v. Lambert*, 984 F.2d 658, 663 (5th Cir.1993) (en banc)

("Ordinarily the district court's reasons for rejecting intermediate categories will clearly be implicit, if not explicit, in the court's explanation for its departure from the category calculated under the guidelines and its explanation for the category it has chosen as appropriate."). That is particularly so where, as here, the sentencing court simply selects the criminal history category that results from counting remote convictions as if they had occurred within the applicable time period. *See United States v. Maurice*, 69 F.3d 1553, 1559 (11th Cir.1995) ("[W]here a sentencing court selects a higher criminal history category under § 4A1.3 by adding point totals for remote convictions, we have held that an explanation of this calculation serves as an adequate explanation for the inappropriateness of the intervening criminal history categories.") (citation omitted); *United States v. Starr*, 971 F.2d 357, 363 & n. 7 (9th Cir.1992) (holding that where court considered remote prior convictions that if counted would have put defendant in Category IV rather than II, the rejection of Category III was "implicit[ ]" and "an explicit statement of the reasons" was not required).

a sentencing court must explain the "reasoning it utilized in selecting a particular criminal history category in upwardly departing." *Id.* at 837. In *Okane*, the sentencing court had departed from Category I to Category III without "address[ing] the critical question of *why* . . . category III was a more appropriate category." *Id.* The Tenth Circuit did not suggest that the sentencing court's error was its failure to discuss Category II.

**5.** *See also United States v. Aymelek*, 926 F.2d 64, 70 (1st Cir.1991) ("Nor should a sentencing court feel constrained to examine the parameters of every [criminal history category] when departing under section 4A1.3. Under those circumstances where a departure is warranted, the emphasis should be on ascertaining a fair and reasonable sentence, not on subscribing slavishly to a particular formula.") (citation omitted).

**6.** *See United States v. Boe*, 117 F.3d 830, 833 (5th Cir.1997) (although "the district court should consider each intermediate criminal history category before arriving at the sentence it settles upon[,] . . . the district court

need not mechanically discuss each intermediate criminal history category" where the "reasons for rejecting the intermediate categories will clearly be implicit") (internal quotation omitted); *United States v. Collins*, 104 F.3d 143, 145 (8th Cir.1997) ("Although the district court did not specifically mention that it had considered each intermediate criminal history category, its findings were adequate to explain and support the departure in this particular case."); *United States v. Maurice*, 69 F.3d 1553, 1559 (11th Cir.1995) (quoted in text below); *United States v. Harris*, 44 F.3d 1206, 1212 (3d Cir.1995) (holding that Circuit "does not require the district court to go through a ritualistic exercise in which it mechanically discusses each criminal history category it rejects en route to the category that it selects," as long as the "reasons for rejecting each lesser category [are] clear from the record as a whole") (internal quotation and citation omitted); *United States v. Starr*, 971 F.2d 357, 363 & n. 7 (9th Cir.1992) (quoted in text below).

The strongest case the defendant cites in support of his position is the Second Circuit's decision in *United States v. Tropiano*, 50 F.3d 157, 162 (2d Cir.1995), which, following Circuit precedent, enforced a step-by-step requirement. In doing so, however, the court noted that other Second Circuit panels had "criticized this procedure as rigid and mechanistic." *Id.* at 162 (citing *United States v. Thomas*, 6 F.3d 960, 964–65 (2d Cir.1993); *United States v. Rodriguez*, 968 F.2d 130, 140 (2d Cir.1992)). *Tropiano* nonetheless adhered to the requirement because it was "too late in the day in this Circuit for a panel" to hold otherwise. *Id.* at 163.[7]

Fortunately, it is still early in the day in the District of Columbia Circuit. In fact, it may not be too late even in the Second Circuit. In a decision announced nine days after oral argument in Bridges' case, the Second Circuit upheld a district court's departure from Category II to Category IV without pausing at Category III. In *United States v. Franklyn*, 157 F.3d 90 (2d Cir.1998), the court noted the defendant's complaint that the district court had violated "our advice to 'pause at each category to consider whether that category ade-

quately reflects the seriousness of the defendant's record.'" *Id.* at 100 (quoting *Tropiano*, 50 F.3d at 162). Notwithstanding the violation, the Second Circuit affirmed the sentence, stating that "so long as the reasons supporting a departure are fully explained, a mechanistic, step-by-step procedure is not required." *Id.* (internal quotation omitted). That is our view as well.

**III**

■ Bridges' second contention is that it was improper for the sentencing court to base its departure on a consideration of his five prior, remote-in-time convictions.[8] Under the Guidelines, prior sentences imposed more than fifteen years (or, in some circumstances, ten years) before the commencement of the defendant's current offense are not counted in his criminal history score. U.S.S.G. § 4A1.2(e). However, "[i]f the court finds that a sentence imposed outside this time period is evidence of similar, or serious dissimilar, criminal conduct, the court may consider this information in determining whether an upward

7. The Fourth Circuit announced a step-by-step requirement in *United States v. Rusher*, 966 F.2d 868, 884 (4th Cir.1992); *see id.* at 890 (Luttig, J., dissenting). Although the Circuit has characterized the requirement as "the proper approach," it has also characterized it as "dicta." *United States v. Walker*, 112 F.3d 163, 166 n. 8 (4th Cir.1997). In *Walker*, the Fourth Circuit held that a sentencing court "adequately considered" an intervening category, based on the fact that it heard the government's argument against applying it, notwithstanding that the court did not state its own reasons for rejecting the category. *Id.* at 166. The Sixth Circuit has also adopted a step-by-step requirement, although it has applied the methodology inconsistently. *Compare United States v. Medved*, 905 F.2d 935, 941–42 (6th Cir.1990) (affirming departure from Category III to VI, on the rationale that uncounted criminal activity would have made defendant a career offender subject to Category VI, although district court did not expressly reject intervening categories), *with United States v. Schultz*, 14 F.3d 1093, 1099–1101 (6th Cir.1994) (vacating sentence in similar circumstances).

8. Bridges also asserts that the district court actually based its departure on only three of his prior convictions, and that accordingly a category lower than V was required under any circumstances. It is plain, however, that the court relied on all five of the prior convictions. The court expressly referred to the PSR at the sentencing hearing, Sentencing Tr. at 16, and the PSR in turn listed all five, PSR ¶¶ 29–34. Although the court specifically mentioned only three of the five convictions at the sentencing hearing, Sentencing Tr. at 16, that discussion was meant only to exemplify the defendant's prior criminal history. *See id.* at 20 (stating that the court was "considering the entire career of this man"). This was confirmed by the court's written Judgment, which adopted the PSR and expressly discussed all five convictions. *See* App. at 24. We have considered and rejected the additional arguments raised by defendant regarding the calculation and explanation of his sentence, and conclude that they do not merit further discussion.

departure is warranted under § 4A1.3." *Id.* § 4A1.2, comment. (n.8). Bridges contends that the five offenses at issue here were neither similar to the instant offense of mail fraud, nor evidence of serious dissimilar criminal conduct. As the government does not contest the latter point, we turn to a consideration of the former. The district court's determination of whether prior offenses are similar to the instant offense is an application of the Guidelines to the facts, which we accord due deference and review only for abuse of discretion.

The five convictions considered by the court were for: (1) unauthorized use of a motor vehicle; (2) forgery; (3) petty larceny; (4) unlawful possession of stolen property; and (5) false pretenses. PSR ¶¶ 29–34. Bridges contends that we should use a "categorical approach" in determining whether offenses are similar, comparing the general characteristics of the crimes rather than their particular facts. Def. Br. at 20. Under this approach, defendant contemplates a comparison of both the names and elements of the offenses, but not of the underlying conduct.

Even if we were to restrict district courts to a categorical approach, we might still conclude that Bridges' past offenses were similar to his present offense of mail fraud. Such a conclusion is clear with respect to the false pretenses and forgery offenses. Mail fraud may be proven by establishing, as was expressly charged in Bridges' information, that defendant used the mail to execute a scheme for obtaining money or property by means of "false or fraudulent pretenses." 18 U.S.C. § 1341; App. at 4 (Information ¶ 3). Hence, if false pretenses were a federal crime, it would be a lesser included offense of mail fraud. As for forgery, both that crime and mail fraud involve the central element of fraudulent intent, *compare* D.C. CODE § 22–1401 (1967) (forgery), *and* 18 U.S.C. § 471 (forgery of obligations of the United States), *with* 18 U.S.C. § 1341 (mail fraud), and the same Part of the Sentencing Guidelines applies to both, *see* U.S.S.G. Ch. 2, Part F (applicable to offenses involving "Fraud and Deceit; Forgery"). These common elements are sufficient to establish the similarity of the crimes.[9] To require more would be to require that the crimes be the same rather than merely similar.

The somewhat more difficult question is whether the remaining three prior offenses—unauthorized use of a motor vehicle, petty larceny, and unlawful possession of stolen property—are in the same category as mail fraud. On the one hand, the absence of an element of fraud or deceit in these prior offenses might be said to render them different from mail fraud.[10] The Guidelines, for example, treat them under different Parts. *Compare* U.S.S.G. Ch. 2, Part B (covering "offenses involving property," including "theft, embezzlement, transactions in stolen goods, and simple property damage or destruction"), *with id.* Ch. 2, Part F (covering "offenses involving fraud or deceit"). On the other hand, all of the offenses ultimately involve the wrongful obtaining and use of the property of another, and it may not be an abuse of discretion for a district court to conclude

---

9. *Cf. United States v. Jones*, 948 F.2d 732, 736–37 (D.C.Cir.1991) (holding that, under U.S.S.G. § 4A1.3(e), which permits upward departures based on "prior similar adult criminal conduct" not resulting in a criminal conviction, prior act of embezzlement was "similar" to present offenses of credit card and wire fraud because they all "involved fraud").

10. We are uncertain precisely which offense the PSR was referring to in describing one of

Bridges' offenses as "unlawful possession of stolen property." Although the then-effective District of Columbia Code did not contain an offense so named, neither party raised this issue. The closest offense appears to have been "receiving stolen goods." D.C. CODE § 22–2205 (1967). That offense does include the element of "intent to defraud," *see id.,* which would justify a conclusion of similarity without further analysis.

that treating such convictions as a single category provides useful insight into the question underlying a § 4A3.1 departure: namely, whether such convictions constitute "reliable information indicat[ing] that the criminal history category does not adequately reflect the ... likelihood that the defendant will commit other crimes." *Id. Cf. Starr,* 971 F.2d at 361 (indicating that uttering counterfeit obligations may be similar to theft for purposes of § 4A1.3).

The District of Columbia, where all of defendant's crimes were committed, now effectively treats the three prior offenses at issue here as similar to the crime of false pretenses—which we already have concluded is itself similar to the instant offense of mail fraud. In 1982, in an effort to "remov[e] anachronistic and unnecessary technical statutory and common law distinctions," *Driver v. United States,* 521 A.2d 254, 258 (D.C.1987) (citation and quotation omitted), the District created a single statute consolidating the various forms of larceny, false pretenses and embezzlement into a single offense called "theft." D.C. CODE § 22–3811. The new crime punishes one who "wrongfully obtains or uses the property of another" with the requisite intent, D.C. CODE § 22–3811(b), and defines the just-quoted phrase as "(1) [t]aking or exercising control over property; (2) making an unauthorized use, disposition ... or possession of property; or (3) obtaining property by trick, false pretense ... or deception." D.C. CODE § 22–3811(a); *see also Galberth v. United States,* 590 A.2d 990, 991 n. 1 (D.C.1991) (holding that conviction for unauthorized use of vehicle merges with conviction for theft of same vehicle). Although the District's 1982 categorization is not binding on us, it offers logical support for the conclusion that the crimes at issue belong in the same category.

We need not, however, rest our conclusion of similarity on the facial elements of the offenses. As the government notes, if we look at the relevant conduct underlying the instant offense, any doubt regarding the similarity of the offenses is removed. The details of that relevant conduct are set forth in Part I above, and are uncontested by the defendant. *See* PSR ¶¶ 4–14. They constitute a scheme in which Bridges not only made unauthorized use of checks that were misdelivered to him, but also obtained, possessed and used "stolen checks or credit cards belonging to five other persons." Def. Br. at 10; *see also id.* at 21 ("Mr. Bridges' mail fraud ... consisted mainly of stolen blank checks sent through the mail...."). The scheme also involved elements of forgery, false pretenses and fraud. Bridges does not seriously dispute that if these underlying acts were considered, it would not be an abuse of discretion to find that the instant offense and the five prior, remote convictions are similar.

Bridges contends, however, that a sentencing court may not look behind the statutory elements of either the instant or prior offenses. We have no need to consider whether a court may look at conduct behind prior offenses, as examining the conduct behind Bridges' instant offense is sufficient to resolve the similarity question in this case.[11] We review the legality of undertaking such an examination de novo.

The relevant Guidelines commentary, portions of which have already been recited, states as follows:

Applicable Time Period. Section 4A1.2(d)(2) and (e) establishes the time period within which prior sentences are counted. As used in § 4A1.2(d)(2) and (e), the term "commencement of the instant offense" includes any relevant conduct. *See* § 1B1.3 (Relevant Conduct). *If the court finds that a sentence im-*

11. Were a court to examine the prior conduct here, it would only confirm the conclusion of similarity. For example, the checks at issue in Bridges' prior conviction for forgery were ones he had stolen by breaking into a building. His prior conviction for false pretenses grew out of his involvement in a check cashing ring. *See* PSR ¶¶ 30, 33.

*posed outside this time period is evidence of similar, or serious dissimilar, criminal conduct, the court may consider this information in determining whether an upward departure is warranted under § 4A1.3 (Adequacy of Criminal History Category).*

U.S.S.G. § 4A1.2, comment. (n.8) (emphasis added). Nothing in the text of this commentary bars a court from looking behind an offense to examine a defendant's conduct. Quite the contrary, the language of the italicized sentence directs the court to determine not whether the defendant's "offenses" are similar but whether his "conduct" is. Moreover, the preceding sentence directs that in determining whether a prior offense is within the time period within which criminal history is calculated, the court is to look to whether "any relevant conduct" of the instant offense took place within that period. An examination of the defendant's relevant conduct, therefore, is perfectly consistent with the commentary's text.

An examination of relevant conduct is also consistent with the reason for the inquiry into similarity. The purpose of that inquiry, the commentary states, is to "determin[e] whether an upward departure is warranted under § 4A1.3." *Id.* Such a departure is warranted when "the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct *or the likelihood that the defendant will commit other crimes.*" *Id.* § 4A1.3 (emphasis added). The accuracy of such a prediction about future behavior can only be enhanced by permitting the court to compare past offenses to exactly what it is the defendant has just done, and not simply to the name or formal elements of that crime. *Cf. Taylor,* 937 F.2d at 683 ("The nature of present conduct is relevant . . . to assess a tendency toward recidivism."). A judge with such license is surely more

likely to be able to discern a pattern in a defendant's behavior than one who must peer with blinders on.[12]

Bridges contends that the Supreme Court's decision in *Taylor v. United States,* 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990), bars a court from determining similarity by looking into the facts behind convictions. In *Taylor,* the defendant pled guilty to being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). The government sought to enhance his sentence, not as an upward departure under § 4A1.3, but rather under a specific statutory provision, 18 U.S.C. § 924(e). That provision imposes a mandatory 15–year sentence on a felon-in-possession with three prior convictions for a "violent felony," defined as a crime that "has as an element the use . . . or threatened use of physical force" or is a specified type of offense, including "burglary." The Court held that in determining whether prior offenses were burglaries, a court must follow a "formal categorical approach, looking only to the statutory definitions of the prior offenses, and not to the particular facts underlying those convictions." 495 U.S. at 600.

Although *Taylor* mandates a categorical approach for enhancements under 18 U.S.C. § 924(e), the reasons for the Court's conclusion counsel a different rule for departures under U.S.S.G. §§ 4A1.2, comment. (n.8) and 4A1.3. First, the Court considered the language of § 924(e) which, it emphasized, refers to " 'a person who . . . has three prior *convictions*' for— not a person who has committed—three previous violent felonies." 495 U.S. at 600 (quoting 18 U.S.C. § 924(e)(1)) (emphasis added). As the Court also noted, § 924(e) "defines 'violent felony' as any crime . . . that 'has as an *element*'—not any crime that, in a particular case, involves—the use or threat of force." *Id.* (quoting 18 U.S.C. § 924(e)(2)(B)(i)) (emphasis added). This

---

**12.** Of course, this goes both ways. A judge who looks behind the name of the instant offense may also be better able to determine that what appears on its face to represent a pattern is not one at all, and thus that a departure is not warranted.

language, the Court said, implied that the term "burglary ... most likely refers to the elements of the statute of conviction, not to the facts of each defendant's conduct." *Id.* at 600–01 (quotation omitted). As noted above, however, the language of the Sentencing Guidelines is almost precisely the opposite: It uses the word "conduct"—not "conviction" or "element." *See* U.S.S.G. § 4A1.2, comment. (n.8).

Second, the *Taylor* Court looked to the legislative history of § 924(e) which, it concluded, "shows that Congress generally took a categorical approach to predicate offenses." 495 U.S. at 601. "No one suggested," the Court noted, "that a particular crime might sometimes count towards enhancement and sometimes not." *Id.* Here, again, the Sentencing Guidelines and their commentary (there is no other "legislative history") counsel the opposite conclusion. Unlike enhancements under § 924(e), departures under § 4A1.3 are discretionary rather than mandatory, and a particular crime may well "sometimes count towards" a departure and sometimes not. A judge who finds that prior offenses are similar under the Guidelines is not required to increase a defendant's sentence, as is a judge who finds that prior offenses are burglaries under § 924(e). *Compare* U.S.S.G. § 4A1.3 ("the court *may* consider imposing a sentence departing from the otherwise applicable guideline range") (emphasis added), *with* 18 U.S.C. § 924(e)(1) ("such a person *shall* be ... imprisoned not less than fifteen years") (emphasis added). Rather, a judge who finds offenses similar under the Guidelines "may consider this information," U.S.S.G. § 4A1.2, comment. (n.8), in making the predictive judgment required for depar-

tures under § 4A1.3. And as discussed above, an examination of underlying conduct is quite consistent with the making of such a judgment.

Finally, *Taylor* focused on the "practical difficulties and potential unfairness of a factual approach" to determining whether a defendant's prior crimes truly were "burglaries." 495 U.S. at 601. "In all cases where the Government alleges that the defendant's actual conduct would fit the generic definition of burglary," the Court noted, "the trial court would have to determine what that conduct was." *Id.* Such a trial-within-a-trial would, the Court feared, raise the unpleasant and potentially unfair specter of retrying past crimes as part of the sentencing of the instant offense, which would in turn present a host of practical problems.[13]

But examining the relevant conduct behind a defendant's instant offense does not add to the practical or equitable problems involved in sentencing under the Guidelines. Even when not contemplating a departure, a sentencing court must determine the scope of such conduct in order to calculate the guideline sentencing range. *See* U.S.S.G. § 1B1.3. A defendant has an opportunity to object to the PSR's characterization of his relevant conduct, and the Guidelines and Federal Rules contain a procedure for resolving such disputes. *See* U.S.S.G. § 6A1.3; Fed. R.Crim. P. 32(b), (c). In this case, Bridges did not object to the PSR's description of the conduct underlying his mail fraud conviction, and there is thus neither difficulty nor unfairness in using that conduct to determine whether his prior offenses are part of a pattern that indicates the likelihood of recidivism.[14]

---

13. *See Taylor*, 495 U.S. at 601 ("Would the Government be permitted to introduce the trial transcript before the sentencing court, or if no transcript is available, present the testimony of witnesses? Could the defense present witnesses of its own ... ? Also, in cases where the defendant pleaded guilty, there often is no record of the underlying facts.").

14. Bridges correctly points out that in *United States v. Donaghe,* 50 F.3d 608 (9th Cir.1995), the Ninth Circuit declined to examine "the specific circumstances of this case" in concluding that the defendant's instant crime of passport fraud was not similar to his prior convictions for child molestation. *Id.* at 612. But the government did not contend that the underlying facts of those crimes were similar;

In sum, we conclude that a court may lawfully examine the relevant conduct underlying a defendant's instant offense in order to determine whether it is similar to his prior offenses. Applying that rule in this case, we find no abuse of discretion in the conclusion that Bridges' offenses were similar, and hence no abuse of discretion in the sentencing court's upward departure.

## IV

The judgment of the district court is affirmed.

it contended only that their *motives* were similar because the passport fraud was committed to escape an investigation into a new charge of child molestation. To resolve Bridges' case, we need not decide whether similarity can be based solely on motive.

*Compare Donaghe, supra, with United States v. Dzielinski,* 914 F.2d 98, 101–02 (7th Cir.1990) (holding that instant offense of bank robbery was similar to prior conviction for fraud because robbery's motive was to repay victim of another of defendant's fraudulent schemes).