Filed: February 3, 2003

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

———————————

No. 01-4847
(CR-01-34)

———————————

United States of America,

Plaintiff - Appellee,

versus

Deon Dixon,

Defendant - Appellant.

———————————

O R D E R

———————————

The court amends its opinion filed January 30, 2003, as follows:

On page 2 -- the reference to use of unpublished opinions as precedent is deleted.

For the Court - By Direction

/s/ Patricia S. Connor
Clerk

PUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
    *Plaintiff-Appellee,*

v.                 No. 01-4847

DEON DIXON,
    *Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
Terrence W. Boyle, Chief District Judge.
(CR-01-34)

Argued: December 6, 2002

Decided: January 30, 2003

Before WILKINS, MICHAEL, and KING, Circuit Judges.

———————————————

Affirmed by published opinion. Judge Wilkins wrote the opinion, in
which Judge Michael and Judge King joined.

———————————————

## COUNSEL

**ARGUED:** Jeanette Doran Brooks, Research and Writing Attorney,
Raleigh, North Carolina, for Appellant. J. Frank Bradsher, Assistant
United States Attorney, Raleigh, North Carolina, for Appellee. **ON
BRIEF:** Thomas P. McNamara, Federal Public Defender, Stephen C.
Gordon, Assistant Federal Public Defender, Raleigh, North Carolina,
for Appellant. John Stuart Bruce, United States Attorney, Anne M.
Hayes, Assistant United States Attorney, Raleigh, North Carolina, for
Appellee.

## OPINION

WILKINS, Circuit Judge:

Deon Dixon appeals the sentence imposed following his guilty plea to being an illegal alien in possession of a firearm, *see* 18 U.S.C.A. § 922(g)(5)(A) (West 2000). Dixon maintains that the district court abused its discretion in departing upward on the basis that Dixon's Criminal History Category (CHC) did not adequately reflect the seriousness of his past criminal conduct, *see U.S. Sentencing Guidelines Manual* § 4A1.3, p.s. (2000). Finding no error, we affirm.

I.

On December 14, 2000, law enforcement officers executed a search warrant at a residence in Raleigh, North Carolina. Upon arriving at the residence, officers directed several individuals standing outside, including Dixon, to lie down on the ground. Dixon complied with the order only after dropping a jacket he had been holding and stepping away from it. A subsequent search of the jacket revealed a .32 caliber pistol and one-tenth of a gram of cocaine base.[1] Further investigation indicated that Dixon had previously been deported to Jamaica and had not received permission to return to the United States. On February 22, 2001, law enforcement officers arrested Dixon at his home. Searches conducted contemporaneously with the arrest yielded over five pounds of marijuana, digital scales, and $7,450 in suspected narcotics proceeds.

Dixon was charged with being an illegal alien in possession of a firearm, *see* 18 U.S.C.A. § 922(g)(5)(A), and illegal reentry into the United States, *see* 8 U.S.C.A. § 1326(a) (West 1999). He pleaded guilty to the firearm charge.

---

[1] Additional quantities of narcotics were found elsewhere in the yard and inside the residence.

2

At sentencing, the district court determined that Dixon was subject to an adjusted offense level of 15 and a CHC of III. Dixon's CHC was based on a 1994 conviction for possession of marijuana, a 2000 conviction for maintaining a place for controlled substances, and the fact that he was on unsupervised probation at the time of the offense of conviction. Not included in Dixon's criminal history score were a 1984 conviction for possession of a controlled substance and four pending charges: (1) a June 1990 arrest in Georgia for possession of marijuana, for which Dixon failed to appear in August 1992; (2) a July 1990 arrest in Massachusetts for possession of a firearm without an identification card and possession of ammunition, for which he failed to appear in October 1990; (3) a September 1991 arrest in Connecticut for possession of marijuana (based on an act of distribution observed by law enforcement officers);[2] and (4) a May 1994 arrest in Georgia for possession of marijuana with the intent to distribute, for which a bench warrant was issued in November 1994.[3]

The Government sought an upward departure based upon these four prior arrests, arguing that Dixon's present conviction and earlier arrests were all tied to narcotics activity. The Government also noted Dixon's repeated use of aliases and false social security numbers and his failure, on more than one occasion, to remain outside the United States after being deported. The district court accepted the Government's argument and departed upward to CHC VI, yielding a guideline range of 41-51 months. The district court sentenced Dixon to 51 months imprisonment. In imposing this sentence, the district court noted that the presentence report provided "an imperfect biography" of Dixon but that

> [m]y reading of it is that you've been involved in a drug war
> against the United States. You are a one person army, so to
> speak. You used firearms, beat people with firearms and
> engaged in drug trafficking, and you've done it forever and

---

[2] While Dixon's presentence report states that this charge "remains pending," J.A. 70, the report does not reflect the exact status of the case.

[3] The facts relating to these four arrests are set forth in Dixon's presentence report. The district court adopted the factual findings in that report, and Dixon does not contest the accuracy of those findings. Thus, we accept the facts contained in the report as true.

> you'll do it forever. Not to mention that you drift in and out of Jamaica to the United States.

J.A. 37.

## II.

A district court may depart from the applicable guideline range when "the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission." 18 U.S.C.A. § 3553(b) (West 2000). Upon identifying a potential departure factor, the court must determine, with reference to the guidelines, policy statements, and commentary, whether the factor is forbidden, encouraged, discouraged, or unmentioned by the Commission as a basis for departure. *See Koon v. United States*, 518 U.S. 81, 92-96 (1996); *United States v. Barber*, 119 F.3d 276, 280 (4th Cir. 1997) (en banc). The district court may depart on the basis of an encouraged factor provided it is not already accounted for by the applicable guideline. *See Barber*, 119 F.3d at 280. We review the decision to depart for abuse of discretion. *See Koon*, 518 U.S. at 91.

Here, the district court departed upward on the basis of U.S.S.G. § 4A1.3, p.s., which provides in pertinent part:

> If reliable information indicates that the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes, the court may consider imposing a sentence departing from the otherwise applicable guideline range.

This language makes clear that the departure factor in question—the representativeness of Dixon's CHC—is an encouraged basis for departure. *See United States v. Concha*, 294 F.3d 1248, 1252 (10th Cir. 2002). And, by definition, this factor is not otherwise accounted for in the criminal history calculation.

Section 4A1.3 identifies several categories of information that may indicate that a defendant's criminal history score is under-

4

representative of his prior criminal conduct, including "prior similar adult criminal conduct not resulting in a criminal conviction." U.S.S.G. § 4A1.3(e), p.s. Here, it is sufficiently clear from the sentencing transcript that, based on the Government's recommendation, the district court departed upward on the ground that Dixon's four pending charges involved criminal conduct similar to the offense of conviction.

Dixon does not challenge the *extent* of the upward departure by the district court. Rather, he claims that *any* upward departure based on his three pending narcotics charges is improper. Specifically, Dixon maintains that the criminal conduct underlying these three charges is not similar to his federal firearm offense because the prior misconduct involved narcotics activity, not firearms. By contrast, the primary argument advanced by the Government is that the criminal conduct underlying Dixon's prior narcotics arrests is, in fact, similar to the conduct involved in the offense of conviction, because the present conviction and the earlier arrests all involved narcotics activity. Thus, Dixon's analysis of similarity focuses on whether the offense of conviction itself is similar to the prior misconduct, while the Government's analysis focuses more broadly on whether the offense of conviction *and* its relevant conduct are similar to the earlier misconduct. We therefore turn to the question of whether, in determining if prior criminal conduct is similar to the offense of conviction for purposes of § 4A1.3, a district court may only consider the elements of the offense of conviction, or instead may also consider relevant conduct surrounding that offense.

The only decision we have found directly addressing the use of relevant conduct in assessing similarity is *United States v. Bridges*, 175 F.3d 1062 (D.C. Cir. 1999). Unlike the present case involving prior misconduct not yet resulting in a conviction, the prior criminal conduct in *Bridges* involved five convictions that were too remote in time to be used in calculating the defendant's CHC. *See* U.S.S.G. § 4A1.2(e). However, the reasoning of *Bridges* is useful here, because *Bridges* addressed whether the prior convictions, though too remote, could nonetheless serve as the basis for an upward departure under § 4A1.3 on the ground that they were similar to the relevant conduct accompanying the offense of conviction. *See id.* § 4A1.2, comment. (n.8) ("If the court finds that a sentence imposed outside this time

5

period is evidence of similar, or serious dissimilar, criminal conduct, the court may consider this information in determining whether an upward departure is warranted under § 4A1.3 . . . .").

In *Bridges*, the District of Columbia Circuit rejected the argument that "in determining the similarity of offenses, a sentencing court is limited to comparing their facial elements and may not consider the conduct underlying any of the offenses—even the offense for which the defendant is currently being sentenced." *Bridges*, 175 F.3d at 1063. The court first explained that even under the defendant's proposed "categorical approach," which would compare the names and elements of the offenses, but not the underlying conduct, at least two of the prior convictions would likely be considered similar to the offense of conviction. *Id.* at 1070. However, the court emphasized that "[w]e need not . . . rest our conclusion of similarity on the facial elements of the offenses. . . . [I]f we look at the relevant conduct underlying the instant offense, any doubt regarding the similarity of the offenses is removed." *Id.* at 1071. The court explained that the language of § 4A1.2, Application Note 8, supports the conclusion that a court may consider relevant conduct associated with the offense of conviction in determining whether a prior offense is similar:

> Nothing in the text of this commentary bars a court from looking behind an offense to examine a defendant's conduct. Quite the contrary, the language . . . directs the court to determine not whether the defendant's "offenses" are similar but whether his "conduct" is. Moreover, the preceding sentence directs that in determining whether a prior offense is within the time period within which criminal history is calculated, the court is to look to whether "any relevant conduct" of the instant offense took place within that period. An examination of the defendant's relevant conduct, therefore, is perfectly consistent with the commentary's text.

*Id.* at 1072.

In addition, *Bridges* recognized that examining relevant conduct is consistent with the purpose of the similarity inquiry: determining whether an upward departure is warranted because"`the criminal history category does not adequately reflect the seriousness of the defen-

6

dant's past criminal conduct *or the likelihood that the defendant will commit other crimes*.'" *Id.* (quoting U.S.S.G. § 4A1.3, p.s.). As the court explained,

> [t]he accuracy of such a prediction about future behavior can only be enhanced by permitting the court to compare past offenses to exactly what it is the defendant has just done, and not simply to the name or formal elements of that crime. A judge with such license is surely more likely to be able to discern a pattern in a defendant's behavior than one who must peer with blinders on.

*Id.* (citation omitted).

We find *Bridges* persuasive. Though its holding is based in part on commentary to § 4A1.2 not directly applicable here, the reasoning of *Bridges* is instructive, particularly given the close relationship between § 4A1.2 and § 4A1.3. As with § 4A1.2, Application Note 8, nothing in the language of § 4A1.3 precludes a court from examining the relevant conduct associated with the offense of conviction in determining whether prior criminal conduct is "similar" to that offense. Further, as noted in *Bridges*, the commentary to § 4A1.2 states that in determining whether prior convictions are sufficiently close in time to the offense of conviction to be included in a defendant's CHC, "the term `commencement of the instant offense' includes any relevant conduct." U.S.S.G. § 4A1.2, comment. (n.8). This language reflects the fundamental principle of the Sentencing Guidelines that relevant conduct should be treated as an integral part of the offense of conviction. *See* U.S.S.G. § 1B1.3 (defining relevant conduct); *see also* U.S.S.G. § 5K2.21, p.s. (permitting an upward departure "to reflect the actual seriousness of the offense based on conduct . . . underlying" another offense not charged, or a charge dismissed, because of a plea agreement); *cf.* U.S.S.G. § 4A1.1, comment. (backg'd.) (stating that "§ 4A1.3 permits information about the significance or similarity of past conduct underlying prior convictions to be used as a basis for imposing a sentence outside the applicable guideline range").

Finally, we agree with the District of Columbia Circuit that examining the relevant conduct surrounding the offense of conviction will

7

often be important in accurately assessing whether a defendant has engaged in a pattern of criminal conduct and thus is more likely to commit future offenses. We therefore hold that in determining whether prior criminal conduct is similar to the offense of conviction for purposes of a possible upward departure under § 4A1.3, a district court may consider not only the elements of the offense of conviction, but also any relevant conduct associated with that offense.

Here, it is clear that the criminal conduct underlying Dixon's prior arrest on a firearm possession charge is similar to the offense of conviction involving illegal possession of a firearm. Further, the misconduct underlying his three pending narcotics charges is similar to the *relevant conduct* surrounding his federal firearm conviction, which included possession of narcotics with the intent to distribute. Indeed, Dixon received a four-level enhancement because he possessed the firearm in connection with felonious possession of cocaine base. *See* U.S.S.G. § 2K2.1(b)(5). Thus, the district court properly concluded that the misconduct underlying all four pending charges is similar to the offense of conviction.[4]

Dixon also contends that the district court improperly relied on his arrest record in determining that an upward departure was warranted. While § 4A1.3 permits an upward departure to be based on "reliable information," it further provides that "a prior arrest record itself shall not be considered." U.S.S.G. § 4A1.3, p.s. Rather, a district court

---

[4] The sentencing transcript refutes Dixon's assertion that neither the district court nor the Government offered any explanation concerning the similarity between Dixon's pending narcotics charges and the offense of conviction. *See, e.g.,* J.A. 29 ("[T]here's a clear pattern what [Dixon has] been doing. . . . There are all kinds of ties to one thing, Your Honor, that's drugs.") (statement by prosecutor); *id.* at 31 ("The basis of the [present] charge [is that] he possessed a firearm and cocaine.") (same); *id.* at 36 ("Clearly all of these offenses have nothing to do with anything other than drugs . . . .") (same); *id.* at 37 ("My reading of [the presentence report] is that you've been involved in a drug war against the United States. . . . You used firearms, beat people with firearms and engaged in drug trafficking, and you've done it forever and you'll do it forever.") (statement by district court); *id.* at 38 ("[A] fair reading of [the presentence report] says that you are in the drug business; you are in the violence business; you are in the gun business . . . .") (same).

8

"must rely on the facts underlying the arrests." *United States v. Fuller*, 15 F.3d 646, 651 (7th Cir. 1994). Dixon complains that the underlying facts were provided with respect to only one of the four pending charges listed in the presentence report. We conclude, however, that the facts provided in the presentence report and discussed by the Government at sentencing—which Dixon does not contest as inaccurate—went sufficiently beyond the mere fact of arrest so as not to run afoul of that guideline section. In sum, the district court did not abuse its discretion in departing upward based on § 4A1.3.[5]

## III.

For the reasons set forth above, we affirm Dixon's sentence.

*AFFIRMED*

---

[5] Because we affirm the upward departure by the district court on the ground that Dixon's prior arrests involved misconduct similar to the offense of conviction, we do not address whether *dissimilar* prior criminal conduct not resulting in a conviction could be the basis for an upward departure under § 4A1.3. *Cf.* U.S.S.G. § 4A1.2, comment. (n.8) (permitting consideration of serious dissimilar remote *convictions*). We also do not consider whether an upward departure might have been justified here on the alternative ground that Dixon was "pending trial or sentencing on another charge at the time of the instant offense." U.S.S.G. § 4A1.3(d), p.s.

9