**Darryl J. WARNER, Petitioner–Appellant,**

v.

**UNITED STATES of America, Respondent–Appellee.**

**No. 00–1485.**

United States Court of Appeals, Second Circuit.

Oct. 11, 2001.

Bruce R. Bryan, Syracuse, NY, on submission, for appellant.

Robert P. Storch, Assistant United States Attorney, Northern District of New York, Albany, NY; Joseph A. Pavone, United States Attorney, Northern District of New York, on the brief, on submission, for appellee.

Present JOSEPH M. McLAUGHLIN, ROSEMARY S. POOLER, Circuit Judges, and LEONARD B. SAND, District Judge.*

SUMMARY ORDER

ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the or-

* The Honorable Leonard B. Sand, United States District Court Judge for the Southern District of New York, sitting by designation.

der of said District Court be and it hereby is AFFIRMED in part and VACATED and REMANDED in part.

Darryl J. Warner appeals from the final judgement of the United States District Court for the Northern District of New York, sentencing him to 95 months imprisonment and ordering him to pay restitution of $369,924.66 after Warner pleaded guilty to one count each of conspiracy to make and utter counterfeit securities, security fraud and false statement in violation of 18 U.S.C. §§ 371, 1341 and 1001, respectively. For the reasons given below, we affirm the district court's sentencing order, but vacate and remand for further consideration of the restitution order.

Warner, along with twelve other individuals, was indicted on multiple counts of conspiracy and various acts of fraud in December 1998. Warner pleaded guilty to Counts One, Three and Thirteen of the indictment, as described above. As part of his plea agreement, Warner admitted to the scheme's broad outlines: that he organized and led a counterfeiting conspiracy which had counterfeit checks printed and shipped across state lines. Warner admitted he and his co-conspirators cashed the counterfeit checks at retailers in New York, Massachusetts and Rhode Island. He stipulated the amount lost was between $350,000 and $400,000. Warner also stipulated that various sections of the United States Sentencing Guidelines would apply at his sentencing, including § 3B1.4, which permits increasing the base level by two if defendant used or attempted to use a minor to commit the offense.

At the sentencing hearing, the district court set a base offense level of 6, total offense level of 22, and a criminal history category of IV, producing a guidelines range of 84 to 105 months. Warner was sentenced to 95 months total, with 60 months on Count One and 35 months on Count Three to run consecutively, and 35 months on Count Thirteen to run concurrently.

We review "a district court's interpretation and application of the Guidelines *de novo*, and its findings of fact for clear error." *United States v. Rivera*, 192 F.3d 81, 86 (2d Cir.1999).

Warner first attacks his sentence by arguing the district court erred in sentencing him under U.S.S.G. § 2F1.1(b)(6)(A) (" § 2F1.1"). The guideline permits the district court to increase the offense level by two if it finds the "the defendant relocated, or participated in relocating, a fraudulent scheme to another jurisdiction to evade law enforcement or regulatory officials." U.S.S.G. § 2F1.1(b)(6)(A). The Telemarketing Fraud Prevention Act of 1998, Pub.L. 105–184 (the "Act") directed the Sentencing Commission to provide substantially increased penalties for telemarketing fraud. Pub.L. 105–184 § 6(c)(1). Warner argues the guideline applies only to telemarketing fraud. We disagree. The Commission states § 2F1.1 enhanced sentencing beyond the Act's requirement because it applies to crimes other than telemarketing. U.S.S.G. Amend. 587. However, the Commission noted the Act instructed the Commission to "ensure that its implementing amendments are reasonably consistent with other relevant directives to the Commission and other parts of the sentencing guidelines." U.S.S.G. Amend. 587, *see also* Pub.L. 105–184 § 6(c)(4). The Commission also relied on its base mandate, set forth in 28 U.S.C. § 991(b)(1)(B), which directs the Commission to avoid disparities between similarly situated plaintiffs. U.S.S.G. Amend. 587. Enacting legislation is not the sole source of authority for the Commission's setting of a guideline. *United States v. Ferrarini*, 219 F.3d 145, 158–60 (2d Cir.2000) *cert. denied* —— U.S. ——,

121 S.Ct. 1997, 149 L.Ed.2d 1001 (2001). The Commission may rely on its general statutory power in fashioning guidelines going beyond the scope of the implementing legislation. *Id.* at 160. Because the Sentencing Commission had the authority to promulgate guidelines reaching beyond the specific definitions found in the enacting legislation, and because § 2F1.1 is not restricted to telemarketing crimes, we find the district court did not err in its application of § 2F1.1 to Warner's sentence.

■ Warner also argues there is no evidence showing he moved between New York, Massachusetts and Rhode Island to evade law enforcement, and the district court erred in enhancing his sentence on that basis. The PSR states, "[t]he defendant moved his scheme between New York, Massachusetts and Rhode Island in an effort to avoid detection." Warner objected to this finding of the PSR on *ex post facto* grounds, and indirectly questioned its factual basis. We assume *arguendo* that this is sufficient to preserve the issue for appeal. The district court adopted the PSR during the sentencing hearing, albeit obliquely. "A sentencing court satisfies its obligation to clearly resolve disputed sentencing issues if it indicates, either at the sentencing hearing or in the written judgment, that it is adopting the recommendations in the PSR." *United States v. Martin,* 157 F.3d 46, 50 (2d Cir.1998) (citation omitted). Given that the district court adopted the language of the PSR, and that the plea agreement sets forth facts showing Warner often moved and the scheme followed him, the district court did not commit clear error in finding Warner's moves were to evade law enforcement.

■ Warner further argues the district court erred in applying U.S.S.G. § 3B1.4, which permitted the enhancement of Warner's sentence based on the use of a minor in the scheme. Before addressing the merits, we are confronted with a threshold issue. Warner stipulated in his plea agreement that "U.S.S.G. § 3B1.4 increases the offense level by 2 levels." Warner makes a variety of arguments in his attempt to avoid the stipulation, none of which are persuasive. His authorities stand for the proposition that the court is not bound by an inaccurate stipulation, not that the defendant is not bound by an inaccurate stipulation. *See United States v. Telesco,* 962 F.2d 165, 167 (2d Cir.1992). Warner voluntarily agreed to the stipulation. The plea agreement noted the district court was free to impose its own sentence, regardless of the stipulations reached by the parties. The district court also told Warner at the sentencing hearing the plea agreement did not bind the court to any decisions regarding sentencing. *See Telesco,* 962 F.2d at 167. We find Warner bound by the stipulation. Thus, the district court did not err in enhancing his sentence under U.S.S.G. § 3B1.4.

■ Warner next challenges the district court's imposition of restitution and the restitution order's schedule of payments. We review "an order of restitution for abuse of discretion." *United States v. Kinlock,* 174 F.3d 297, 299 (2d Cir.1999). We find the district court acted correctly in imposing restitution without regard to Warner's financial resources. Under the Mandatory Victims Repayment Act, imposition of full restitution for all victims is mandatory in this case, and is to be ordered "irrespective of [defendant's] ability to pay." 18 U.S.C. § 3663A(c)(1)(A)(ii); *United States v. Boyd,* 239 F.3d 471 (2d Cir.2001). Further, Warner agreed to pay full restitution in his plea agreement. Such stipulations are binding. *United States v. Allen,* 201 F.3d 163, 167–68 (2d Cir.2000). The district court properly set the restitution amount.

However, the district court erred in setting the restitution schedule. As Warner did not object below to the restitution or-

der, we review for plain error. *United States v. Tran,* 234 F.3d 798, 813 (2d Cir. 2000). The district court must consider a number of factors when issuing the restitution order, including defendant's financial resources, assets and projected earnings. 18 U.S.C. § 3664. "If the record fails to demonstrate that the court considered these mandatory factors, then this court will vacate [the] restitution order." *Kinlock,* 174 F.3d at 299–300 (citation omitted). There is no particular restitution recitation the court must make, rather, the record must show some "affirmative act or statement allowing an inference that the district court considered the defendant's ability to pay." *Id.* at 300. Even if the PSR considers the statutory factors, and the PSR is adopted by the district court, that alone is not enough. *Id.* Here, the entire restitution order states, "This restitution shall be paid at the minimum rate of $100 per month or 10 percent of your gross income whichever is greater." While the district court adopted the PSR, it was mentioned at the sentencing hearing only in the context of listing the victims and amounts owed to them. The court made no reference to whether the information in the PSR influenced its decision as to restitution or defendant's inability to pay a fine. Nor did the district court differentiate between Warner's ability to pay while incarcerated and his ability to pay after release from prison. The district court thus failed to consider the necessary statutory factors. We therefore vacate the restitution order and remand for the district court to develop a record taking into consideration the necessary statutory factors.

We have examined the remainder of Warner's claims and we find them to be without merit.