

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-25-2003

# USA v. Stokes

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-1875

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"USA v. Stokes" (2003). *2003 Decisions.* Paper 252.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/252

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No: 03-1875

_____

UNITED STATES OF AMERICA
v.
DENNIS STOKES
aka
William Bullis
aka
Fred Stidham, Jr.
Aka
Fred Stidham

Dennis Stokes,

Appellant

_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania

District Court Judge: The Honorable Sylvia H. Rambo
(D.C. Criminal No. 1:02-CR-139-01)

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
September 19, 2003

Before: MCKEE, SMITH, <u>Circuit Judges</u>,  SCHILLER*, <u>District Judge</u>

(Opinion Filed: September 24, 2003 )

_____

OPINION OF THE COURT

_____

_____
* The Honorable Berle M. Schiller, United States District Judge for the Eastern District
of Pennsylvania, sitting by designation.

SMITH, Circuit Judge.

I. INTRODUCTION

Appellant Dennis Stokes appeals his sentence for bank fraud, arguing that the District Court erred in imposing a two level sentencing enhancement pursuant to United States Sentencing Guidelines Manual ("U.S.S.G.") § 2B1.1(b)(8)(A) on the basis that Stokes "relocated or participated in relocating a fraudulent scheme to another jurisdiction to evade law enforcement." For the reasons set forth below, we will affirm the sentence imposed by the District Court.

II. FACTS AND PROCEDURE

From November 7, 2001 to March 9, 2002, Stokes and two other co-conspirators, Gillis and Shotsberger, participated in a bank fraud scheme in Florida, Virginia, New Jersey and Pennsylvania. In furtherance of the scheme, the conspirators opened savings and checking accounts at various banks, after which they would produce counterfeit checks using the routing numbers from these accounts. The names of local businesses were printed on the counterfeit checks to make them appear to be genuine payroll checks. Checks in various amounts were then written to fictitious individuals for whom the conspirators had false identification cards, enabling them to cash the checks at other branch offices of the banks on which they were drawn. The conspirators opened accounts at nine different banks in four states and cashed or attempted to cash 107 checks at multiple branches of the victim banks. The total amount of loss to the banks was

1

$87,095.00. The conspirators were apprehended and arrested on March 9, 2002.

Shotsberger's son, Nathaniel, told law enforcement officials that his father and Stokes would conduct the bank fraud in a particular area until "problems" developed, and then would move on to another area. (PSR ¶ 17).

On June 14, 2002, an information was filed charging Dennis Stokes with a single count of bank fraud in violation of 18 U.S.C. § 1344. A plea agreement was filed on the same date. On June 28, 2002, Stokes entered his guilty plea, and the District Court held a joint sentencing hearing for Shotsberger and Stokes on February 28, 2003.

Stokes and Shotsberger objected to the two level enhancement under U.S.S.G. § 2B1.1(b)(8)(A) on the ground that there was no proof that the co-conspirators relocated the scheme to another jurisdiction to evade law enforcement.

Counsel for Shotsberger argued that the "problems" referred to by Nathaniel Shotsberger were problems with the banks and not with law enforcement. She stated: "It is our position that the reason they moved on is because the banks would close their accounts and not because there was any evidence that they were running from the Police or thought the Police were on to them." (App. 33).

The District Court stated:

> I am going to follow the *Warner*[1] case, plus the facts of this case

---

[1] *Warner v. United States*, 21 Fed. Appx. 43 (2d Cir. 2001) (holding that the district court properly applied the guideline two level enhancement for relocating a scheme to another jurisdiction to avoid law enforcement because the district court could adopt the finding in the PSR that defendant frequently moved his counterfeit check scheme between three states in an

clearly show there is an intent to avoid law enforcement.

Officials – I don't know what – I guess it was Mr. Shotsberger who said that problems developed before moving on. Whether these problems were that the banks caught on to them and closed the accounts, or by inference that they were there long enough that they had to move to avoid apprehension, I am going to affirm the presentence report in that enhancement.

(App. 37). The Court calculated a base offense level of six, added eight levels for the amount of loss, two levels for relocation to evade law enforcement, two levels for use of fraudulent identification, and reduced the level by three for acceptance of responsibility, for a total offense level of fifteen. Stokes' criminal history category was VI, yielding a guideline imprisonment range of 41 to 51 months. The Court granted a ten percent downward departure from the upper end of the range pursuant to U.S.S.G. § 5K1.1 and sentenced Stokes to a term of imprisonment of 46 months.

III.    JURISDICTION

The District Court had subject matter jurisdiction pursuant to 18 U.S.C. § 3231. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

IV.    STANDARD OF REVIEW

We review the District Court's interpretation of the Sentencing Guidelines de novo and the factual findings underlying a sentencing enhancement for clear error. *United States v. Johnson*, 302 F.3d 139, 153 (3d Cir. 2002).

V.    DISCUSSION

---

effort to avoid detection).

United States Sentencing Guidelines Manual § 2B1.1(b)(8) states:

> If (A) the defendant relocated or participated in relocating a fraudulent scheme to another jurisdiction to evade law enforcement or regulatory officials; (B) a substantial part of a fraudulent scheme was committed from outside the United States; or (C) the offense otherwise involved sophisticated means, increase by 2 levels. If the resulting offense level is less than level 12, increase to level 12.

Stokes offers two reasons why the two-point enhancement under U.S.S.G. § 2B1.1(b)(8)(A) was improperly applied. First, he argues that the phrase "another jurisdiction" in U.S.S.G. § 2B1.1(b)(8)(A) means a location outside the United States, because all of the states are part of one federal jurisdiction. Second, Stokes argues that the government did not show that the purpose of the relocation of the scheme was to "evade law enforcement."

*A. "Another Jurisdiction"*

The current enhancement for relocating a fraudulent scheme to evade law enforcement evolved from U.S.S.G. § 2F1.1(b)(3) (1987), which read: "If the offense involved the use of foreign bank accounts or transactions to conceal the true nature or extent of the fraudulent conduct, and the offense level as determined above is less than level 12, increase to level 12." That provision remained unchanged, other than by being renumbered as § 2F1.1(b)(5), until the Sentencing Commission promulgated U.S.S.G. Appendix C, Amendment 577, which became effective on November 1, 1998. The language of the amendment was identical to the current § 2B1.1(b)(8) except that part C

4

used the term "sophisticated concealment" rather than "sophisticated means."[2]

 In the "Reason for Amendment" section of Appendix C, Amendment 577, the Commission stated:

> There are three alternative provisions to the enhancement. The first two prongs address conduct that the Commission has been informed often relates to telemarketing fraud, although the conduct may also occur in connection with fraudulent schemes perpetrated by other means. Specifically, the Commission has been informed that fraudulent telemarketers increasingly are conducting their operations from Canada and other locations outside the United States. Additionally, testimony offered at a Commission hearing on telemarketing fraud indicated that telemarketers often relocate their schemes to other jurisdictions once they know or suspect that enforcement authorities have discovered the scheme. Both types of conduct are specifically covered by the new enhancement.

Stokes suggests that the history of the enhancement, arising from a provision specifying "foreign transactions," demonstrates that the two level enhancement of § 2B1.1(b)(8)(A) is only intended to apply to relocation outside the United States. In addition he argues that the language in the "Reason for Amendment," discussing the fact that telemarketers are conducting operations from Canada and other locations outside the United States, suggests this is what was meant by the phrase "another jurisdiction" in Section (A).

Stokes' argument premised on the language in the "Reason for Amendment" is inconsistent with the structure of the test. The sentence he quotes explains the rationale

---

[2] This change in terms occurred as part of Amendment 587, which broadened clause C after the passage of the Telemarketing Fraud Prevention Act of 1998. *See* U.S.S.G. Appendix C, Amendment 587, Reason for Amendment.

for Section (B), which covers fraudulent schemes committed outside the United States. It is, instead, the subsequent sentence that explains the rationale for Section (A). Nor is his argument about the reference to "foreign" jurisdictions in prior incarnations of the relevant guideline compelling, since the amendment was intended to broaden the scope of the enhancement in order to "provide an increase for fraud offenses that involve conduct . . . that makes it difficult for law enforcement authorities to discover the offense or apprehend the offender." U.S.S.G. Appendix C, Amendment 577, Reason for Amendment. More importantly, neither of his arguments are meritorious because his definition of "other jurisdictions" does not comport with the clear language of the amendment.

In interpreting meaning, we must begin with the language of the Guideline. *Cf. United States v. Gregg*, 226 F.3d 253, 257 (3d Cir. 2000), *cert. denied*, 532 U.S. 971 (2001) (applying this principle to interpret a statute). Where language clearly expresses the Commission's intent, the inquiry is at an end and a resort to other explanatory text is unnecessary. *Cf. id*. In *Gregg*, we held that the penalty provision of the Freedom of Access to Clinic Entrances Act was clear when read in context:

> In authorizing compensatory statutory damages of $5,000 in lieu of actual damages, Congress uses the phrase "*per violation*." 18 U.S.C. § 248(c)(1)(B). This is in sharp contrast to the language used in the provision permitting courts to assess substantial civil penalties to vindicate the public interest in cases brought by attorneys general. *See* 18 U.S.C. § 248(c)(2)(b). In § 248(c)(2)(B) the attorney general can request civil penalties of up to $25,000 "*against each respondent*." *Id*. The language of § 248(c)(2)(B) illustrates that Congress knew how to explicitly instruct a court to assess

6

> damages per defendant rather than per violation. The absence of analogous per respondent language in § 248(c)(1)(B) and the use of the phrase "per violation" indicates that Congress carefully considered the issue and decided that compensatory statutory damages will be imposed per violation, a manner that differs from the civil penalties imposed to vindicate the public interest.

*Gregg*, 226 F.3d at 258; *see also United States v. Bridges*, 175 F.3d 1062, 1066 (D.C. Cir. 1999) (holding that step-by-step consideration was not required for every departure under U.S.S.G. § 4A1.3 because language in the Guideline covering departure above the highest criminal history category indicated "the Commission knew how to require step-by-step consideration when it wanted to").

The meaning of the phrase "another jurisdiction" in U.S.S.G. § 2B1.1(b)(8)(A) is similarly clear when read in context of the entire provision. Sentencing Guidelines § 2B1.1(b)(8)(B) uses the phrase "outside the United States." Just as in *Gregg* and *Bridges*, the use of this phrase shows that the Sentencing Commission knew how to craft a provision requiring activity outside the United States, and chose not to do so for part (A). Therefore, the District Court properly interpreted the phrase "another jurisdiction" as applying to different states within the United States.

B. *"Purpose to Evade Law Enforcement"*

Stokes argues that the government did not introduce sufficient evidence to prove that the purpose of the relocation of the scheme was to "evade law enforcement." He pointed out that the co-conspirators bounced back and forth between the different states: for example committing a crime in Pennsylvania, then in Florida, then returning to

7

Pennsylvania. The fact that they "bounced back and forth" does not prove that they did not originally leave each state to avoid law enforcement. Moreover, the District Court's finding that the co-conspirators moved to evade law enforcement was supported by Nathaniel Shotsberger's statement as reported in the Pre-Sentence Report and was not clearly erroneous.

Because "other jurisdiction" may refer to different states within the United States, and there was sufficient evidence to support a finding of intent to evade law enforcement, the District Court did not err in applying the two-level enhancement under U.S.S.G. § 2B1.1(b)(8)(A).

VI.  CONCLUSION

For the foregoing reasons, we will affirm the judgment of the District Court.

---

TO THE CLERK:

Please file the foregoing opinion.

By the Court,

  /s/ D. Brooks Smith
Circuit Judge

8