

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-23-2003

# USA v. Shotsberger

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-1923

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"USA v. Shotsberger" (2003). *2003 Decisions*. Paper 27.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/27

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 03-1923

UNITED STATES OF AMERICA

v.

KERRY DEAN SHOTSBERGER

Appellant

Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Criminal Action No. 02-cr-00138)
District Judge: Honorable Sylvia H. Rambo

Submitted Under Third Circuit LAR 34.1(a)
October 31, 2003

Before: SCIRICA, Chief Judge, NYGAARD and AMBRO, Circuit Judges

(Opinion filed December 23, 2003)

OPINION

AMBRO, Circuit Judge

Kerry Dean Shotsberger appeals a sentence enhancement based on the District

Court's allegedly unsubstantiated inference that he moved among states for the purpose of

evading law enforcement. Shotsberger argues that a court may not infer evasion and apply the enhancement based merely on the commission of fraud offenses in multiple jurisdictions. The Government, conversely, contends that the District Court's decision was based on a factual finding supported by the record. Because we find that the District Court's characterization of its reasoning was at worst harmless error, we affirm.

## I. Factual and Procedural History

From November 7, 2001 to March 9, 2002, Shotsberger, his co-defendant Dennis Stokes, and an unindicted co-conspirator orchestrated a bank fraud scheme in Florida, Virginia, New Jersey and Pennsylvania. The conspirators produced counterfeit payroll checks and deposited them in savings and checking accounts at various banks in these states. They then wrote checks to fictitious individuals, for whom they had false identification cards, and cashed the checks at branch offices of the banks on which they were drawn. Over the course of the scheme, the conspirators cashed or attempted to cash 107 checks at nine victim banks, amounting to a total loss of approximately $95,000.

In March 2002, Shotsberger, Stokes, and Shotsberger's son, Nathaniel, were arrested in Camden, New Jersey. Federal Bureau of Investigation (FBI) agents interviewed all three on March 11, 2002. Nathaniel informed the agents that his father and Stokes had been involved in counterfeit check schemes since 1993. He also stated that Shotsberger and Stokes would conduct the bank fraud in a particular area until "problems" developed, and then would move on to another area.

Shotsberger pleaded guilty to one count of bank fraud, in violation of 18 U.S.C. § 1334. Prior to sentencing, Shotsberger's probation officer recommended a two-level enhancement under U.S.S.G. § 2B1.1(b)(8)(A), which applies to defendants who "relocated, or participated in relocating, a fraudulent scheme to another jurisdiction to evade law enforcement or regulatory officials." The recommendation was based on "defendant's *apparent* relocation of a fraudulent scheme to various jurisdictions to evade law enforcement" (emphasis added). Shotsberger objected to the enhancement, citing the lack of evidence indicating that the defendants moved between states for the *purpose* of evading law enforcement.[1]

At the sentencing hearing, the prosecutor responded to Shotsberger's objection by arguing that one could make a "reasonable inference" that the defendants had moved among states in order "to commit crimes and to avoid law enforcement." The District Court (per Judge Rambo) granted the enhancement. In so doing, it both purported to make a factual finding and attributed significance to the Second Circuit's unpublished opinion in *Warner v. United States*, 21 Fed. Appx. 43, 2001 WL 1203066 (2nd Cir.

---

[1] In an addendum to the presentence report, the probation officer noted Stokes's and Shotsberger's "extensive criminal histories in Florida for similar misconduct, and a history of supporting themselves with bad or counterfeit checks," and reasoned that the defendants "*appear* to have left Florida for places where they were unknown" (emphasis added). The report also relied on Nathaniel Shotsberger's indication, referred to above in part, that "his father and Dennis Stokes had participated in counterfeit check schemes for years, and would commit frauds in a particular area until 'problems' developed before moving on."

3

2001). Judge Rambo explained:

> I am going to follow the *Warner* case, plus the facts of this case clearly show there is an intent to avoid law enforcement. Officials—I don't know what—I guess it was Mr. Shotsberger who said that problems developed before moving on. Whether these problems were that the banks caught on to them and closed the accounts, or by inference that they were there long enough that they had to move to avoid apprehension, I am going to affirm the presentence report in that enhancement.

Shotsberger's counsel noted that Nathaniel Shotsberger was not before the Court and was thus unable "to testify as to what he meant by problems." She continued, "It is our position that the reason [the defendants] moved on is because the banks would close their accounts and not because there was any evidence that they were running from the Police or thought the Police were on to them." Additionally, Shotsberger's counsel clarified that it was Nathaniel Shotsberger, rather than defendant Kerry Shotsberger, who had made the statement regarding "problems." The District Court acknowledged its error but did not reconsider its decision. Shotsberger was sentenced to 41 months imprisonment, 3 years supervised release, $45,046.71 in restitution, and a $100 special assessment. He appeals.

The United States District Court for the Middle District of Pennsylvania had jurisdiction over the federal criminal prosecution under 18 U.S.C. § 3231. We have appellate jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742.[2]

---

[2]The appropriate standard of review is subject to dispute in this case. As noted below, Shotsberger argues that the District Court applied the sentence enhancement based on an inference. He suggests that we should therefore review the District Court's ruling *de novo*, citing *Herskowitz v. Nutri/System, Inc.*, 857 F.2d 179, 183-84 (3rd Cir. 1988).

4

## II. Discussion

We recently decided the issue raised in this appeal in our not-precedential opinion in *United States v. Stokes*, 75 Fed. Appx. 888, 2003 WL 22214164 (3d Cir. 2003). In *Stokes*, the panel affirmed the sentence imposed by the District Court on Dennis Stokes, Shotsberger's co-defendant. The central issue on appeal in that case was whether the defendants' travel *among* states (in other words, the fact that they "bounced back and forth") foreclosed a finding that they had left each state to avoid law enforcement. We held that a finding of evasion was permissible despite the defendants' unconventional travel patterns. In addition, we concluded that "the District Court's finding that the co-conspirators moved to evade law enforcement was supported by Nathaniel Shotsberger's statement as reported in the Pre-Sentence Report and was not clearly erroneous." *Id*. at 892. This latter question—whether the District Court's application of the sentence enhancement was supported by the record—is the principal issue raised by Shotsberger on this appeal.

He asserts that the District Court's application of the enhancement was based on an impermissible inference, citing the Court's intention to rely on *Warner*. According to Shotsberger, we should uphold the District Court's decision only if it meets the standard

---

Because we conclude that the District Court applied the enhancement based at least in part on its factual findings, the relevant standard of review is clear error. *See United States v. Cianscewski*, 894 F.2d 74, 82 (3d Cir. 1990) ("[D]etermin[ing] whether the commission of some particular offense involved more than minimal planning is essentially factual, and therefore subject only to clearly erroneous review.").

set out in *Edward J. Sweeney & Sons, Inc. v. Texaco*, 637 F.3d 105, 116 (3d Cir. 1980). *Sweeney* provides, "Inferred factual conclusions based on circumstantial evidence are permitted only when, and to the extent that, human experience indicates a probability that certain consequences can and do follow from the basic circumstantial facts." *Id*.

Because we find that Nathaniel Shotsberger's statement was an alternative, reasonable basis for the District Court's decision, we need not decide here whether *Sweeney* would otherwise operate to prohibit an inference on these facts.[3] The most appellant-friendly reading of the District Court's statement is that it identified two bases for applying the sentence enhancement: first, Nathaniel Shotsberger's statement, and secondly, an inference based on the interstate nature of the defendants' crimes.[4] Insofar as the former, factual finding was a sufficient independent ground of decision, we need not engage in discussion of the *Sweeney* standard.

Shotsberger's counsel argued at the sentencing proceeding that the word "problems" in Nathaniel Shotsberger's statement was insufficiently defined to permit a factual finding of evasion. She suggested, as already noted, that the defendants had

---

[3] Similarly, we need not decide the appropriate standard of review for evaluating allegedly inappropriate inferences.

[4] The Government suggests that the District Court may not have intended to rely on *Warner* at all with respect to its inference holding. Instead, it might have cited *Warner*, a case which is remarkably on point, for its holdings that the enhancement applies to relocation across state borders and in bank fraud cases—issues that Shotsberger raised in the District Court.

instead "moved on . . . because the banks would close their accounts." The District Court did not clearly err in rejecting this position. As the Government noted in its Brief, "[S]omeone with defendant's extensive experience in the fraudulent uttering of checks well knows . . . a bank's closing of an account involved in fraudulent activity ordinarily leads immediately to referral of the matter to law enforcement authorities for investigation."[5]

The fact that the Court may have been mistaken as to the issuer of Nathaniel Shotsberger's statement at the time of ruling on the objection does not alter our conclusion. The Court abided by its ruling despite being made aware of its factual error immediately thereafter. Given that the Court reached an identical decision with respect to defendant Stokes in the *same proceeding*—despite unequivocal knowledge that Stokes did *not* make the statement—it seems clear that the identity, or lack thereof, of the speaker and defendant was immaterial to the Court's factual finding.

## III. Conclusion

To the extent that the District Court erred in its identification of the speaker as Nathaniel rather than Kerry Dean Shotsberger, that error was harmless. Because the Court did not clearly err in finding that Nathaniel Shotsberger's statement furnished

---

[5]Additional evidence supported the District Court's finding of intent to evade. For example, the defendants staging area was located at a Sheraton Hotel in Wilmington, Delaware—a state in which none of their crimes was committed—though a hotel in Cherry Hill or Philadelphia would have been more convenient.

evidence of the defendant's intent to evade law enforcement, we affirm Kerry Dean Shotsberger's sentence.

_____

TO THE CLERK:

Please file the foregoing Opinion.

By the Court,

/s/ Thomas L. Ambro, Circuit Judge